## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARGUERITE MACQUEEN,  )
Individually and as the Surviving Spouse  )
of David MacQueen, Deceased,  )
        )
       Plaintiffs,  )
        )
    v.  )    Civil Action No. 13-831-SLR-CJB
        )    Consolidated
UNION CARBIDE CORPORATION,  )
et al.,  )
        )
       Defendants.  )

### REPORT AND RECOMMENDATION

This matter arises out of an asbestos-related personal injury action filed by Plaintiff

Marguerite MacQueen ("Plaintiff"), individually and as the surviving spouse of the late David

MacQueen, against numerous Defendants in the Superior Court of Delaware, in and for New

Castle County ("Superior Court"). (D.I. 1, ex. 1 (hereinafter, "Complaint")) Defendants Crane

Company ("Crane") and Elliott Company ("Elliott") (collectively, "Removing Defendants") filed

notices of removal, arguing, as the basis for removal, that any actions they took relating to

Plaintiff's claims came when they were acting under an officer or agency of the United States

within the meaning of the federal officer removal statute, 28 U.S.C. § 1442(a)(1) ("Section

1442"). (D.I. 1)[1] Presently pending before the Court is Plaintiff's motion to remand this action

back to the Superior Court, on the grounds that Removing Defendants did not meet the

---

[1]    Because Removing Defendants filed two separate notices of removal, this Court opened two separate actions, Civil Action Nos. 13-831-SLR-CJB and 13-835-SLR-CJB, both entitled *MacQueen v. Union Carbide Corp., et al* (the "*MacQueen* Actions"). The actions have since been consolidated, and Civil Action No. 13-831 has been designated as the lead case. (Civil Action No. 13-831, D.I. 70; Civil Action No. 13-835, D.I. 58) Unless otherwise noted, citations to docket numbers are to documents that have been filed in the lead case.

requirements for removal under Section 1442 (the "motion to remand" or "Motion"). (D.I. 35)

For the reasons that follow, I recommend that the motion to remand be DENIED.

## I.     BACKGROUND

On March 28, 2013, Plaintiff filed this lawsuit in the Superior Court. (*See* Complaint)  In

the Complaint, Plaintiff asserted state law causes of action based on David MacQueen's

("MacQueen") alleged exposure to asbestos and asbestos-containing products while employed

(1) by the United States Navy as a welder/machinist aboard the U.S.S. Randolph and the U.S.S.

Independence from 1956 to 1960; and (2) as a salesman by Union Carbide Corporation from

1961 to 1980. (Complaint at ¶ 11; D.I. 36, ex. 2)  On May 10, 2013, Removing Defendants filed

their respective notices of removal in this Court.

On June 7, 2013, Plaintiff filed the motion to remand. (D.I. 35)  The Motion was fully

briefed as of July 12, 2013, (D.I. 92), and on August 9, 2013, oral argument was heard regarding

the Motion, (D.I. 190 (hereinafter, "Tr."))[2]  The parties thereafter submitted several

supplemental letters to apprise the Court of recent opinions issued with respect to purportedly

similar motions to remand, which the Court has reviewed. (D.I. 141, 146, 188, 189)  The Motion

is now ripe for decision.[3]

---

[2]       This matter was originally referred by Judge Sue L. Robinson to Judge Sherry R. Fallon; Judge Fallon presided over oral argument on August 9, 2013. (D.I. 24)  On September 11, 2013, Judge Robinson ordered that the case then be referred to the Court to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 152)  In the process of resolving this Motion, the Court has thoroughly reviewed the briefing and the transcript of the oral argument.

[3]       Prior to the consolidation of the *MacQueen* Actions, Plaintiff filed a joint motion to remand that was docketed in both cases. (*See* Civil Action No. 13-831, D.I. 35; Civil Action No. 13-835, D.I. 26; D.I. 92 at 1)  However, because the actions have been consolidated, the motion filed on the docket of Civil Action No. 13-835 has been procedurally terminated.

## II.    STANDARD OF REVIEW

The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). In order to remove pursuant to Section 1442(a)(1), a defendant such as those here must establish the following:  (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009).

Unlike the case with the general removal statute, 28 U.S.C. § 1441, which courts must construe strictly in favor of remand, the federal officer removal statute is to be construed broadly, in order to effectuate Congress' intent that federal officers have access to a federal forum in which they can litigate the validity of their defense of official immunity. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *1 & n.2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013). To that end, the United States Supreme Court has explained that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of [Section] 1442(a)(1).'" *Arizona v. Manypenny*,

3

451 U.S. 232, 242 (1981) (citation omitted).  Nevertheless, it remains well-settled that the party

removing an action to federal court bears the burden of proving that removal is appropriate.

*Kirks*, 654 F. Supp. 2d at 222 (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.

1990)).

## III.    DISCUSSION

In this case, the parties dispute whether Removing Defendants have met their burden with

respect to the third and fourth elements of the federal officer removal statute.  (D.I. 40 at 8; D.I.

92 at 11)[4]  That is, Plaintiff argues that Removing Defendants have failed to establish (1) a

colorable federal defense; and (2) the requisite causal nexus between Plaintiff's claims and the

conduct performed under color of a federal office.  (D.I. 40 at 8; D.I. 92 at 11)  Yet the "causal

nexus requirement is closely related to evidence supporting a colorable federal defense where a

government contractor is the defendant because both elements require the defendant [to] show

that it acted at the federal government's command." *Hagen v. Benjamin Foster Co.*, 739 F.

Supp. 2d 770, 785 (E.D. Pa. 2010) (internal quotation marks and citation omitted).  Thus, since

that analysis "is essentially the same [as that associated with] the colorable defense

requirement[,]" *id.* (internal quotation marks and citation omitted), the dispute here really turns

---

[4]      As to the first prong of Section 1442, the parties do not dispute that Removing
Defendants, as corporations, are "persons" within the meaning of the statute. *Hagen v. Benjamin
Foster Co.*, 739 F. Supp. 2d 770, 776 n.6 (E.D. Pa. 2010) (citing cases); *Kirks*, 654 F. Supp. 2d at
223. The second "acting under" prong is satisfied if a defendant's "actions that led to the lawsuit
were based on a federal officer's direct orders or comprehensive and detailed regulations."
*Hagen*, 739 F. Supp. 2d at 784 (internal quotation marks and citation omitted). In cases where
removing defendants assert the government contractor defense to a failure to warn claim, "the
burden for demonstrating the defendant acted under an officer of the United States is lower than
that associated with demonstrating a colorable federal defense." *Id.* at 785. Thus, for the same
reasons that the Court ultimately determines here that the federal defense asserted in this case is
colorable, discussed *infra*, the "acting under" prong has also been met. *Id.*

on whether Removing Defendants can demonstrate a colorable federal defense under Section 1442. The Court will therefore take that issue up first.

### A.   Colorable Federal Defense

The applicable federal defense raised by Removing Defendants here is the government contractor defense. (*See* Civil Action No. 13-831, D.I. 1 at ¶ 11; Civil Action No. 13-835, D.I. 1 at ¶¶ 11-12) This defense is applicable to both failure to warn and design defect claims, and for purposes of this motion to remand, the Court will focus its analysis on the former type of claim. *See, e.g., Walkup*, 2013 WL 5448623, at *2.[5] The Court will first examine the legal standard governing the government contractor defense. Then, the Court will apply Crane's evidence[6] to the elements of the defense.

### 1.   Background on Government Contractor Defense

The Supreme Court established the framework of the government contractor defense in

---

[5]   In her briefing, Plaintiff argues that her sole claims against Removing Defendants are failure to warn claims, and argues against removal on that basis. (D.I. 40 at 4) Elliott disputes this characterization of Plaintiff's Complaint, contending that "Plaintiff seeks recovery on a variety of [] grounds, including design defect." (Civil Action No. 13-835, D.I. 43 at 9 (citing Complaint at ¶¶ 27, 33)) The Court need not resolve this issue. For the reasons discussed below, the Court concludes that Section 1442 removal is proper based on the failure to warn claims, and that is all that is necessary for removal. *Cf. Morgan v. Bill Vann Co., Inc.*, Civil Action No. 11-0535-WS-B, 2011 WL 6056083, at *7 n.10 (S.D. Ala. Dec. 6, 2011) (noting that the court "need not address the failure to warn claims at all for purposes of the [m]otion to [r]emand as long as [Section] 1442(a)(1) jurisdiction is supported by the defective design claims"). For that reason, the Court will focus herein on the failure to warn claims.

[6]   The Court will focus on Crane's arguments and evidence in support of removal, as its record evidence is more robust than that provided by Elliott. As explained below, the Court concludes that Crane clearly establishes its right to removal under Section 1442, rendering further analysis with respect to Elliott unnecessary. *See Thompson v. Crane Co.*, Civil No. 11-00638 LEK-RLP, 2012 WL 1344453, at *20 n.18, 29 (D. Haw. Apr. 17, 2012) (noting that "one defendant's proper removal is effective as to all of the defendants"); *Allen v. Gen. Elec. Co.*, Civil Action No. 3:09-cv-372 (CFD), 2010 WL 918305, at *5 n.4 (D. Conn. Mar. 9, 2010).

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). In *Boyle*, the Supreme Court explained that

procurement of military equipment involves "uniquely federal interests" that, in certain

circumstances, shields a government contractor from liability for a plaintiff's product liability

claims. *Id.* at 504, 507 (internal quotation marks and citation omitted). The federal interest in

such cases is manifest in the fact that "[t]he imposition of liability on Government contractors

will directly affect the terms of Government contracts [in that] either the contractor will decline

to manufacture the design specified by the Government, or it will raise its price." *Id.* at 507.

In *Boyle*, the Supreme Court held that a government contractor establishes the defense at

issue where: "(1) the United States approved reasonably precise specifications; (2) the

equipment conformed to those specifications; and (3) the supplier warned the United States about

the dangers in the use of the equipment that were known to the supplier but not to the United

States." *Id.* at 512. While the *Boyle* Court applied the government contractor defense to a design

defect products liability claim, federal courts have subsequently recognized the applicability of

the defense to state law failure to warn claims. *See, e.g.*, *Walkup*, 2013 WL 5448623, at *2

(citing cases); *Hagen*, 739 F. Supp. 2d at 783.

However, because design defect and failure to warn claims have theoretical and practical

differences, in the failure to warn context, courts have recast these elements a bit. *See Leite v.*

*Crane Co.*, 868 F. Supp. 2d 1023, 1029 (D. Haw. 2012); *Hagen*, 739 F. Supp. 2d at 783; *see also*

*Joyner v. A.C. & R Insulation Co.*, Civil No. CCB-12-2294, 2013 WL 877125, at *7 (D. Md.

Mar. 7, 2013). In a failure to warn case, the defendant must show that: "(1) the United States

exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings

that conformed to the approved warnings; and (3) the contractor warned the United States of the

dangers in the equipment's use about which the contractor knew, but the United States did not." *Hagen*, 739 F. Supp. 2d at 783; *see also Leite*, 868 F. Supp. 2d at 1029.

Resolution of this motion turns on whether Crane's evidence in support of the government contractor defense (specifically, affidavits and declarations from experts that were either formerly in the Navy or who have worked with the Navy) sufficiently establishes a colorable defense. Plaintiff argues that Crane's evidence fails to do so because it is purely in the form of inadmissible speculative opinion, offered by defense-hired experts. (D.I. 40 at 2; Tr. at 19 (explaining that "the essence of our position . . . is that it's speculation, particularly speculative expert testimony is inadmissible" and thus cannot be relied upon in making out a colorable federal defense); *see also* Tr. at 59)[7] In support of this argument, Plaintiff relies on a series of cases that reject Section 1442 removal, thus granting remand to state court, after consideration of similar affidavits (and in some instances, the same) to those offered here.[8]

There is, however, a well-documented split in authority with respect to the standard of review applicable to assessing the colorability of the government contractor defense (and, relatedly, to the evidence necessary to make out such a defense). Plaintiff's briefing cited almost

---

[7]    Crane attached its supporting evidence, consisting of affidavits, declarations, and supporting materials, to its Notice of Removal. (*See* D.I. 1 at exs. 2-4)

[8]    These decisions include *Cardaro v. Aerojet Gen. Corp.*, Civil Action No. 05-2684, 2010 WL 3488207 (E.D. La. Aug. 27, 2010); *Luce v. A.W. Chesterton Co., Inc.*, No. C-10-2111 MMC, 2010 WL 2991671 (N.D. Cal. July 29, 2010); *Moore v. Asbestos Defendants (B\*P)*, No. CV 10-01638 RS, 2010 WL 2650487 (N.D. Cal. July 1, 2010); *Lindenmayer v. Allied Packing & Supply, Inc.*, No. C09-05800 TEH, 2010 WL 234906 (N.D. Cal. Jan. 14, 2010); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009); *Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877 (W.D. Wash. Sept. 9, 2009); *Barrett v. CLA-VAL Co.*, Case No. CV 07-7774-PSG (FFMx) (C.D. Cal. Feb. 5, 2008) (D.I. 36, ex. 3); and *Scarbrough v. Gen. Elec. Co.*, CV 07-1192-RGK (PJWx) (C.D. Cal. Apr. 13, 2007) (D.I. 36, ex. 4). (D.I. 40 at 12, 19)

exclusively to decisions falling on the side of the split favorable to her (referring to those cases as

"[a]uthoritative [d]ecisional [l]aw"), while largely ignoring the decisions on the other

side—particularly those that come from this Court and others in the Third Circuit. (*See* D.I. 40 at

15 & *passim*) At oral argument, Plaintiff's counsel acknowledged the divide, however, noting

that "the fact that this is a very close question and is a very hotly disputed question between

district courts in this country is [] manifest." (Tr. at 58) While it is true that the several

decisions cited by Plaintiff granted remand, it is also true that many other courts have considered

the *same* evidence, deemed it sufficient, and therefore denied remand.[9]  In resolving this issue,

the Court will below consider both lines of case law.

### 2.    **Appropriate Standard of Review**

Recently, in *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010), the

United States District Court for the Eastern District of Pennsylvania examined this split in

authority, and addressed the standard of review a court should utilize in assessing the colorability

of this type of defense. In doing so, it observed that the question "boils down to an argument

over what a defendant must proffer to defeat a plaintiff's motion for remand." *Hagen*, 739 F.

---

[9]    *See, e.g., Walkup*, 2013 WL 5448623, at *3-4, *9 (discussing split in authority and recommending denial of remand); *Leite*, 868 F. Supp. 2d at 1028, 1042 (discussing split and denying remand); *Thompson*, 2012 WL 1344453, at *17-20, *29 (same); *Shepherd v. Air & Liquid Sys. Corp.*, C.A. No. 12-143L, 2012 WL 5874781, at *3, *9 (D.R.I. Nov. 20, 2012) (same); *Hagen*, 739 F. Supp. 2d at 777-81, 786 (same); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 989, 992 (C.D. Ill. 2011) (same); *Kirks*, 654 F. Supp. 2d at 225-26 (same). It is worth noting that after the issuance of the *Leite* and *Thompson* decisions, the United States District Court for the District of Hawaii granted the plaintiffs leave to take interlocutory appeals to the United States Court of Appeals for the Ninth Circuit, given the sharp split in authority on this issue and the pendency of numerous cases in the district raising the same evidence and issues. *Thompson v. Crane Co.*, Civil No. 11-00638 LEK-RLP, 2012 WL 2359950 (D. Haw. June 19, 2012); *Leite v. Crane Co.*, Civil No. 11-00636 JMS/RLP, 2012 WL 1982535 (D. Haw. May 31, 2012). The appeals are presently pending before the Ninth Circuit.

Supp. 2d at 777.[10]

As *Hagen* noted, on one side of the line are courts such as that in *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009), which have arguably imposed a more restrictive interpretation of what amounts to a "colorable" federal defense in this context. *Hagen*, 739 F. Supp. 2d at 779-80; *Joyner*, 2013 WL 877125, at *5. In *Holdren*, the district court acknowledged the Supreme Court's admonition that Section 1442(a) should not be subject to a narrow interpretation. *Holdren*, 614 F. Supp. 2d at 140-41. However, *Holdren* viewed the requirement of a "colorable" federal defense in the removal context as one meant to address constitutional concerns, stating that it is "only the assertion of a colorable federal defense that justifies the federal court's limited Article III jurisdiction in these cases" and that "[w]ithout this requirement, [Section] 1442(a) would expand[] the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Id.* at 140 (internal quotation marks and citations omitted). The *Holdren* Court thus stated that "[b]ecause it alone confers Article III jurisdiction, the 'colorable' standard requires that a federal court carefully weigh the plausibility of the proffered defense." *Id. Holdren* also expressed the view that where a federal officer defense is raised by government contractors (as opposed to "bona fide federal officers"), those contractors are "degrees different from both the federal officers who originally inspired the removal statute

---

[10]     The District Judge in *Hagen*, Judge Eduardo C. Robreno, presides over MDL No. 875, the multidistrict products liability litigation. *Walkup*, 2013 WL 5448623, at *4; *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1377 (J.P.M.L. 2011). For over two decades, all asbestos-related personal injury and wrongful death actions were centralized in the Eastern District of Pennsylvania as MDL No. 875. *In re: Asbestos Prods. Liab. Litig.*, 830 F. Supp. 2d at 1377. Judge Robreno has presided over MDL No. 875 since 2008. *Walkup*, 2013 WL 5448623, at *4 n.7; *Joyner*, 2013 WL 877125, at *4 n.6. In December 2011, the Judicial Panel on Multidistrict Litigation ceased transferring such actions to the MDL (with certain limited exceptions). *In re: Asbestos Prods. Liab. Litig.*, 830 F. Supp. 2d at 1377-78.

and the cases in which the Supreme Court later coined its cautionary language [that Section 1442(a) should not be subject to a narrow interpretation]." *Id.* at 141. Noting that "comity and federalism require a careful determination of whether there is a meaningful conflict between state law and federal policy[,]" *Holdren* found that in private contractor cases, courts should be wary about "[r]elaxing [the "colorability"] standard too far[.]" *Id.* at 137, 141; *see also Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 WL 2959877, at *3 (W.D. Wash. Sept. 9, 2009) ("The situation of a private contractor asserting a government contractor defense is different because the federal interest is not as obvious.").

On the other side of the line are courts that emphasize the Supreme Court's instruction to broadly construe a defendant's right to removal pursuant to Section 1442, and refuse to "impose [a] draconian evidentiary hurdle" on removing defendants. *See, e.g., Stallings v. Georgia-Pacific Corp.*, Civil Action No. 3:12-CV-00724-H, 2013 WL 1563231, at *2 (W.D. Ky. Apr. 12, 2013). Indeed, following its extensive examination of the split, the *Hagen* Court declined to follow those courts, like *Holdren*, that have "seemingly required a heightened showing of a colorable federal defense." *Hagen*, 739 F. Supp. 2d at 781. The *Hagen* Court first found the Article III concerns expressed in *Holdren* "overstated[,]" concluding that the Supreme Court had not, as *Holdren* suggested, emphasized that the "colorable defense requirement" was intended to police the line as to whether cases are truly "arising under" federal law for Article III purposes. *Id.* at 781-82 & n.11; *see also Thompson v. Crane Co.*, Civil No. 11-00638 LEK-RLP, 2012 WL 1344453, at *19 (D. Haw. Apr. 17, 2012) (noting that the Court was "unpersuaded by the Article III concerns articulated in *Holdren*"). Additionally, *Hagen* found that though government contractors may well be different in kind than the "paradigmatic federal officer protected by

10

Section 1442(a)(1)," they are nevertheless protected by the statute, reasoning that if the federal

government cannot guarantee its agents access to a federal forum, "it may have difficulty finding

anyone willing to act on its behalf." *Hagen*, 739 F. Supp. 2d at 782 (internal quotation marks

and citations omitted); *see also Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012)

(rejecting plaintiff's argument that private parties (as opposed to federal officers) carry a special

burden, as Section 1442 "has historically authorized removal by private parties without

qualification") (citing cases); *Thompson*, 2012 WL 134453, at *19 (finding that although private

contractors may be several degrees removed from the federal officials who historically benefitted

from federal officer removal, "nothing in [the Supreme Court's decision in] *Boyle* indicates that a

private government contractor's invocation of the federal officer removal statute is subject to

greater scrutiny than a federal employee's").

    Thus, to the extent that cases like *Holdren* require an elevated level of review in

analyzing the colorability of a government contractor defense, *Hagen* found such an approach to

be contrary to the "Supreme Court's clear teaching that a colorable defense need not be proven at

this stage of the litigation due to the broad removal right [Section 1442] creates[.]" *Hagen*, 739

F. Supp. 2d at 781.[11] From there, the *Hagen* Court ultimately articulated what was, in its view,

the appropriate standard to apply when evaluating the colorability of a removing defendant's

---

[11]    The Third Circuit itself has not yet had occasion to address the split in authority.
Prior to recent legislation which took effect on November 9, 2011, orders granting remand were
non-appealable. *Leite*, 2012 WL 1982535, at *4 n.2. At that time, Congress amended the
removal statutes to clarify that orders on removal petitions pursuant to Section 1442 are
appealable as of right. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court
from which it was removed is not reviewable on appeal or otherwise, except that an order
remanding a case to the State court from which it was removed pursuant to section 1442 or 1443
of this title shall be reviewable by appeal or otherwise."); *Leite*, 2012 WL 1982535, at *4 n.2.

federal defense:

> While the Court must require that the facts identified by the defendant
> support the federal defense, the Court is not called upon at this preliminary
> stage to pierce the pleadings or dissect the facts stated. Nor is it the
> Court's function at this stage to determine credibility, weight the quantum
> of evidence or discredit the source of the defense. . . . It is the sufficiency
> of the facts stated—not the weight of the proof presented—that matters. . .
> . Thus, the Court concludes that a defense is colorable for purposes of
> determining jurisdiction under Section 1442(a)(1) if the defendant
> asserting it identifies facts which, viewed in the light most favorable to the
> defendant, would establish a complete defense at trial.

*Id.* at 782-83.

The Court agrees with the *Hagen* Court's method of analysis discussed above, and its

conclusion as to the appropriate standard of review in this context. The Court finds that the

*Hagen* Court's approach is consistent with the broad removal right contemplated by Section

1442, as it "presents a standard which requires a removing defendant to show that its federal

contractor defense is factually supported, i.e., 'colorable,' but does not go so far as to require a

defendant to prove its defense in order to secure removal." *Shepherd v. Air & Liquid Sys. Corp.*,

C.A. No. 12-143L, 2012 WL 5874781, at *3 (D.R.I. Nov. 20, 2012).[12]

That conclusion is also in line with the reasoning of our Court in prior cases, where this

Court has rejected a narrower approach to Section 1442 removal. For instance, in *Kirks v. Gen.*

*Elec. Co.*, 654 F. Supp. 2d 220 (D. Del. 2009), this Court stated that "there are decisions

rejecting evidence such as that proffered by [removing defendant], instead requiring a higher

---

[12]     The Court is also mindful that this standard comes from the MDL Court, "which
has dealt with thousands of similar cases from across the country." *Thompson*, 2012 WL
1344453, at *20 (finding the decision in *Hagen* to be "well reasoned"); *see also In re: Asbestos
Prods. Liab. Litig.*, 830 F. Supp. 2d at 1379 (noting that judges presiding over asbestos actions
will "almost certainly find useful guidance in the many substantive and thoughtful rulings that
have been issued during the lengthy course of the multidistrict proceedings").

threshold of evidence to establish federal officer removal jurisdiction." *Kirks*, 654 F. Supp. 2d at

225. The *Kirks* Court cited to *Holdren* as an exemplary court that had taken this path, but then

"reach[ed] a contrary conclusion" in light of the fact that "the provisions of the federal officer

removal statute are to be construed broadly[.]" *Id.* at 225-26. Additionally, in *Walkup v. Air &*

*Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623 (D. Del. Sept. 26,

2013), following a thorough consideration of the split in authority, this Court again reached the

same conclusion. It adopted the standard utilized in *Hagen*, noting the "trend in this Circuit to

broadly construe the federal officer removal statute[,]" and the fact that the *Hagen* standard has

been embraced by district courts in numerous jurisdictions. *Walkup*, 2013 WL 5448623, at *4

(citing cases).

Therefore, Plaintiff's Motion should be denied if Crane "identifies facts which, viewed in

the light most favorable to the defendant, would establish a complete defense at trial." *Hagen*,

739 F. Supp. 2d at 783.

### 3.    The Parties' Evidence

The parties have presented voluminous exhibits with respect to the government contractor

defense. The evidence put forth by Crane in favor of removal comes from the affidavits,

declarations and/or supporting documentation of (1) Anthony D. Pantaleoni, who has served as

the Vice-President of Environment, Health, and Safety for Crane since 1989, (D.I. 1, ex. 2

(hereinafter, "Pantaleoni Affidavit")); (2) retired U.S. Navy Rear Admiral David P. Sargent, Jr.,

who served in the Navy from 1967 to 1999, (*id.*, ex. 3 (hereinafter, "Sargent Affidavit")); and (3)

Samuel A. Forman, M.D., who served in the Navy as a medical officer from 1977 through 1983,

and as a civilian employee of the Navy until 1986, (*id.*, ex. 4 (hereinafter, "Forman

13

Declaration")).[13] Based on this evidence, Crane argues that it supplied products and related warnings to the Navy in conformity with the Navy's precise specifications, and the Navy possessed knowledge regarding the dangers of asbestos that was at least equal to that of its equipment suppliers, including Crane. (D.I. 1 at ¶ 12)

In response, Plaintiff presents evidence that, she contends, paints a much different picture—one in which nothing prevented manufacturers such as Removing Defendants from including asbestos warnings with their products. (D.I. 40 at 24-33) This evidence includes a Declaration from Dr. Barry I. Castleman, a scholar of the history of asbestos hazards and related corporate conduct, and various naval and manufacturer documents relating to warning labels. (D.I. 36, ex. 5-40)

###### 4.    Analysis

As explained above, the government contractor defense displaces state law for a failure to warn claim where the removing defendant establishes that (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not. The government contractor defense analysis "is undertaken whilst viewing the facts in the light most favorable to Defendants, and does not address the merits of the defense." *Hagen*, 739 F.

---

[13]    The headings of the Sargent Affidavit, Pantaleoni Affidavit, and Forman Declaration reference the captions of various cases, but do not specifically refer to the *MacQueen* Actions. Though it does not appear that these documents were executed specifically for this case, the Court finds that they are appropriate to consider here because they pertain to issues common to this case as well as others. *Cf. Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1151 n.8 (E.D. Pa. 2011).

Supp. 2d at 783-84.

The crux of the parties' dispute centers on the first element of the defense; Plaintiff does not appear to seriously dispute that Removing Defendants have established the remaining elements. (*See* D.I. 40 at 5 (reciting *Boyle* elements and asserting that "the removing defendants have no evidence for the first element")) For the reasons discussed below, the Court finds that Crane has raised a colorable federal defense.

a.    **Governmental Exercise of Discretion and Approval of Warnings**

The first element of the government contractor defense—that the government exercised its discretion and approved certain warnings—is met where "the government's approval [of warnings] goes 'beyond merely 'rubber stamping' the contractor's choice'" such that if "'the government chooses its own warnings, the contractor has certainly fulfilled this first condition.'" *Leite*, 868 F. Supp. 2d at 1038 (quoting *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1004 (7th Cir. 1996)).[14] Crane has established a colorable foundation for this element through the Sargent Affidavit.

According to Admiral Sargent, the Navy provided equipment manufacturers such as Crane with precise specifications "as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by [manufacturers such as Crane] for

---

[14]    *See also Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) (noting that the government's involvement must "transcend rubber stamping" and that "where the government goes beyond approval and actually determines for itself the warnings to be provided, the contractor has surely satisfied the first condition because the government exercised its discretion"); *Allen*, 2010 WL 918305, at *2 ("To prove the 'reasonably precise specifications' requirement, [the removing defendant] must establish that the government actively participated in creating the specifications for the products and warning labels the defendants supplied, and that the government imposed these specifications on the defendants.").

ultimate use aboard Navy ships." (Sargent Affidavit at ¶ 58) Based on the content of these

specifications, as well as the actual practice as it evolved in the field, Admiral Sargent attested

that the manufacturers "would not have been permitted . . . to vary or to deviate in any respect

from the Navy specifications in supplying equipment, including affixing any type of warning or

caution statement to equipment intended for installation in a Navy ship[.]" (*Id.*) The Navy

similarly had precise specifications with respect to the instruction books and technical manuals

accompanying such equipment. (*Id.* at ¶ 59) According to Admiral Sargent, the Navy did not

permit equipment manufacturers to "include any type of warning or caution statement in

instruction books or technical manuals, beyond those required and approved by the Navy without

prior discussion and approval by the Navy." (*Id.* at ¶ 60) Admiral Sargent explained that the

Navy reviewed and approved the contents of all technical manuals, including any cautionary

language or emphasis, "in an exacting manner[,]" often making extensive line-by-line edits to

such manuals and their included warnings. (*Id.*) These detailed specifications were logical and

necessary, Admiral Sargent stated, because uniformity was critical to Naval operation, and

inconsistent warnings would have resulted "[i]f every equipment [] manufacturer were allowed to

decide on the need for, and provide its own safety and health warnings [including those related to

asbestos]." (*Id.* at ¶ 62)

Based upon his knowledge and experience in the field, Admiral Sargent concluded that

the Navy would not have permitted equipment suppliers to affix asbestos-related warnings on

packaging or containers for valves or related parts, or in any related literature, supplied to the

Navy during the relevant timeframe. (*Id.* at ¶ 67) To further bolster this conclusion, Admiral

Sargent explained that pursuant to the applicable specifications and his personal experience, any

16

warnings appearing in technical manuals for naval products "refer[ed] specifically to safe

operating and maintenance procedures and not to any more generic health related issues." (*Id.* at

¶¶ 69-70; *see also* Forman Declaration at ¶ 59 (stating that "[t]he Navy has not depended on

equipment warnings in its workplaces concerning long-term occupational health issues"))

Admiral Sargent also pointed out that the Navy's own relevant technical manuals did not include

asbestos-related cautions; he stated that the absence of such "cautionary language in the Navy's

own manuals for equipment or for asbestos-containing materials is consistent with the notion that

the Navy did not accept, and did not permit, asbestos-related warnings in technical manuals

relating to individual pieces of machinery or equipment," and was consistent with his own

experience that such warnings were "neither sought nor welcome from manufactures of such

items." (Sargent Affidavit at ¶¶ 64-66; *see also* Forman Declaration at ¶ 84 (explaining that

"[g]iven the Navy's state-of-the-art knowledge concerning asbestos related hazards and its robust

safety and health program, it would be unreasonable to assume that the Navy would have

accepted any advice pertaining to asbestos related safety precautions from a manufacturer of

equipment"))

    This evidence, when viewed in the light most favorable to Crane, demonstrates that the

Navy's role with respect to warnings for products supplied to the Navy went beyond mere

rubber-stamping. It could demonstrate that the Navy was intimately involved in determining

what warnings would be (or would not be) provided as to products located on Navy ships,

including asbestos-containing products. To the extent, then, that Crane did not include warnings

to end-users about the potential hazards of asbestos regarding its products installed on the

relevant Navy ships, (D.I. 40 at 31), it has presented evidence that, if credited by the fact finder,

could establish that the absence of asbestos-related warnings was accomplished at the Navy's

discretion. *Cf. Hagen*, 739 F. Supp. 2d at 784 (noting that "to the extent the affidavits are true, it

is clear that the Navy was responsible for the lack of warnings" and that this would suffice to

demonstrate the first element of the defense). Other courts that have considered this testimony

by Admiral Sargent (and that have also rejected a narrow standard for assessing Section 1442

removal) have reached the same conclusion. *See, e.g., Joyner*, 2013 WL 877125, at *8; *Leite*,

868 F. Supp. 2d at 1038-39; *Thompson*, 2012 WL 1344453, at *22-24; *Ellis v. Pneumo Abex*

*Corp.*, 798 F. Supp. 2d 985, 991 (C.D. Ill. 2011); *Beckwith v. Gen. Elec. Co.*, No. 3:09CV0216

(AWT), 2010 WL 1287095, at *5-6 (D. Conn. Mar. 30, 2010); *Allen v. Gen. Elec. Co.*, Civil

Action No. 3:09-cv-372 (CFD), 2010 WL 918305, at *2 (D. Conn. Mar. 9, 2010).[15]

---

[15]     As noted *supra*, this Court recently had occasion to consider similar motions to
remand and record evidence to that presently before the Court, and each time reached the same
conclusion—that removing defendants had sufficiently made out this element of the government
contractor defense (and, indeed, all necessary elements of Section 1442 removal). *Walkup*, 2013
WL 5448623, at *7-8; *Kirks*, 654 F. Supp. 2d at 225. Although the *Walkup* and *Kirks* Courts
considered different affidavits with respect to this element than the Sargent Affidavit, the content
of those affidavits was very similar to the content of Admiral Sargent's Affidavit. *Walkup*, 2013
WL 5448623, at *5-7 (first element of government contractor defense satisfied based on
affidavits of defendant employee J. Thomas Schroppe and Admiral Ben J. Lehman, which
explained that naval specifications governed the instructions and warnings accompanying
equipment, the "Navy controlled the decision of which warnings should or should not be
included[,]" and defendant would not be permitted to include with its products any type of
warning statement) (internal quotation marks and citation omitted); *Kirks*, 654 F. Supp. 2d at
223-25 (similarly relying on affidavits of Admiral Lehman and defendant employee David
Hobson to find first element of government contractor defense satisfied).

In contrast, this Court reached the opposite conclusion in *In re Asbestos Litig. (Seitz)*, 661
F. Supp. 2d 451 (D. Del. 2009) and *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR,
1999 WL 191565 (D. Del. Mar. 26, 1999), finding that removing defendants had failed to satisfy
their burden of establishing a colorable federal defense. *In re Asbestos Litig.*, 661 F. Supp. 2d at
455; *Megill*, 1999 WL 191565, at *4. However, those decisions were based on different
records—ones much less robust than the instant record and the records before the *Walkup* and
*Kirks* Courts. *In re Asbestos Litig.*, 661 F. Supp. 2d at 455 (finding "no evidence of record that

As noted above, Plaintiff presents a host of contrary evidence that she claims establishes that: (1) Naval policy did not, in fact, prohibit manufacturers from issuing warnings related to hazardous products, including asbestos; (2) such policy specifically authorized such warnings; and (3) many Naval contractors actually did warn about asbestos in the past. (*See* D.I. 40 at 23-33; D.I. 92 at 14-17) However, this is not the time for the Court to "dissect the facts stated. . . . [or to] determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen*, 739 F. Supp. 2d at 782; *see also Thompson*, 2012 WL 1344453, at *28 n.25 ("The Court acknowledges that [p]laintiff hotly contests the [] [d]efendants' position that the Navy's specifications did not allow for asbestos warnings to end-users, but, under the standards applicable to federal officer removal, this is a factual dispute which this Court need not rule upon at this preliminary stage of the case."); *Allen*, 2010 WL 918305, at *4 (stating that plaintiff's competing arguments and evidence "more appropriately address[] issues to be resolved at trial, rather than on a motion to remand"). Instead, the decision as to whether Plaintiff's evidence regarding the defense's applicability should be credited over Crane's evidence is one to be resolved when the "defense[] [is] litigated in the federal courts." *Willingham*, 395 U.S. at 407 (rejecting position that removal is only justified where a defendant asserts "a clearly sustainable defense[,]" as he is not required to "win his case before he can have it removed"); *see also*

---

the U.S. Navy prohibited [removing defendants] from, or otherwise directed defendants related to, issuing warnings" as "[t]he affidavits [presented by removing defendants] fail[ed] to specifically address the issue of warnings"); *Megill*, 1999 WL 191565, at *4 (same); *see also Walkup*, 2013 WL 5448623, at *7 & *8 n.12 (concluding that removing defendant had established a colorable federal defense and explaining that contrary *Seitz* and *Megill* decisions "were based on a different record" in that "evidence such as that presented in the three affidavits filed here" was "not presented by the defendants in *Seitz* and *Megill*"); *Kirks*, 654 F. Supp. 2d at 225 & n.8 (same as to *Megill*).

*Hagen*, 739 F. Supp. 2d at 782.[16]  Here, the Court's job is merely to analyze, as a threshold matter, whether that defense is *colorable*.  And it is.

Plaintiff also argues that the nature of Crane's evidence amounts merely to the "subjective belief and unsupported speculation" of Crane's experts that the "Navy *would have* barred asbestos warnings *if* [Crane] tried to warn."  (D.I. 40 at 6 (certain emphasis omitted))  She asserts that such "hypothetical conjecture" is inadmissible, leaving Crane with no valid evidence with which to meet this element.  (*Id.* at 6-7)  The Court disagrees with this "speculation" argument in two respects.

First, to the extent that the argument is that Admiral Sargent's opinion is unmoored from any reliable foundational underpinnings, this is not so.  The Sargent Affidavit sets out Admiral Sargent's extensive experience in the Navy, particularly his knowledge of the operation and maintenance of Navy warships and of Naval specifications.  (Sargent Affidavit at ¶¶ 1-2, 4-5)  This experience provides the foundation for Admiral Sargent's opinion regarding what the Navy would or would not have allowed, as to the type of asbestos warnings at issue here.  This experience, bolstered by citation to facts (such as the requirements of particular Naval specifications) takes his testimony outside of the realm of "unsupported speculation" and renders it useful in addressing this issue.  *Leite*, 868 F. Supp. 2d at 1036; *cf. Willis v. BW IP Int'l Inc.*,

---

[16]     By way of example, Plaintiff puts forward the affidavit of Dr. Castleman, who among other things, opines that he has "never seen any document that discusses or suggests that the United States military prohibited any manufacturer or seller from warning about asbestos[,]" or interfered with a company's decision to do so.  (D.I. 39, ex. 40 at ¶ 7; *see also* D.I. 40 at 24-25)  Courts considering this issue have noted similar declarations from Dr. Castleman, and that they would counter evidence such as that put forward here by Crane.  *Shepherd*, 2012 WL 5874781, at *7-8.  Nevertheless, those courts have found a colorable federal defense established. *Id.*

811 F. Supp. 2d 1146, 1154 (E.D. Pa. 2011); *Reaser v. Allis Chambers Corp.*, No. CV 08-1296-SVW (SSx), 2008 WL 8911521, at *3 n.2 (C.D. Cal. June 23, 2008).

Second, the Court does not agree with the portion of Plaintiff's argument suggesting (as the *Holdren* Court found), that as to this element of the defense, Crane would need to establish that the government actually considered, and made an express decision against the placement of asbestos warnings. (D.I. 40 at 14-23)  It is true that Crane has not produced evidence showing that the Navy expressly prohibited any asbestos-related warnings from being placed on its equipment. However, "[t]he prevailing view is that an independent contractor does not have to show an express government prohibition on all warnings, but rather, must establish that the government 'exercised its discretion' regarding warnings to be placed on defendant's product." *Faddish v. Gen. Elec. Co.*, MDL No. 875, Civil Action No. 09-70626, 2010 WL 4146108, at *9 (E.D. Pa. Oct. 20, 2010) (citations omitted); *see also Getz v. Boeing Co.*, 654 F.3d 852, 867 (9th Cir. 2011); *Shepherd*, 2012 WL 5874781, at *5-6 & n.6.  The Sargent Affidavit accomplishes this, thus providing Crane with a sufficient basis to assert a colorable federal defense—all that is required at the removal stage.[17]

---

[17]     During oral argument, Plaintiff suggested that in the ruling in *Hagen*, Judge Robreno did not address whether evidence of the kind in Admiral Sargent's affidavit amounts to impermissible speculation in this regard. (Tr. at 31 ("The degree of speculation in these affidavits was not addressed [by] Judge Robreno.")) In *Hagen*, however, the plaintiff had argued that defendants' proffered evidence was "generic boilerplate." *Hagen*, 739 F. Supp. 2d at 777. While the *Hagen* Court may not have explicitly referred to allegations of "speculation[,]" it was addressing the same essential inquiry as that present here: "whether the government contractor defense colorably shields defendants from failure to warn liability for asbestos-related injuries allegedly sustained on Navy ships where the defendants contend the Navy would not have allowed any such warnings." *Id.* at 780. And *Hagen* found evidence similar to that put forward here by Crane to be sufficient to meet this element. *Id.* at 784. So too have other courts, including our own, which *have* directly confronted, and rejected, the "speculation" argument. *See, e.g., Walkup*, 2013 WL 5448623, at *3, *7; *Stallings*, 2013 WL 1563231, at *2, *5; *Leite*,

For the reasons set forth above, Crane has made a colorable showing as to this first element.

### b.      **Conformity to Approved Warnings**

Crane has also sufficiently established that it provided the government's required warnings. *Thompson*, 2012 WL 1344453, at *25; *see also Allen*, 2010 WL 918305, at *3 (noting that satisfaction of this element requires "accurate conformity with specifications or government approval of the delivered product") (internal quotation marks and citation omitted).  Mr. Pantaleoni's affidavit indicates that Crane made and supplied equipment, including valves, for Navy ships under contracts between Crane and the Navy, and that "[a]ll equipment supplied by Crane Co. to the Navy was built in accordance with [] Navy specifications."  (Pantaleoni Affidavit at ¶¶ 4-6)  As was previously noted, Crane has also put forward evidence that the Navy's specifications included requirements for written materials, including technical manuals and labels or markings, submitted with products manufactured for the Navy. *Thompson*, 2012 WL 1344453, at *25; *Allen*, 2010 WL 918305, at *3.  That evidence could, if viewed in the light most favorable to Crane, indicate that the Navy's actual acceptance and utilization of Crane's products, including the written materials associated therewith that did not contain asbestos warnings, conformed to the Navy's specifications and requirements. *Thompson*, 2012 WL 1344453, at *25; *Allen*, 2010 WL 918305, at *3.  Thus, Crane has made a colorable showing as to this element.

### c.      **Warnings by Defendants**

Crane's evidence also satisfies the third element of the government contractor

_____

868 F. Supp. 2d at 1034, 1036; *Reaser*, 2008 WL 8911521, at *3 n.2.

22

defense—that the contractor warned the Navy of the dangers in Crane's equipment that Defendant knew of, but the Navy did not. *See Hagen*, 739 F. Supp. 2d at 784; *Allen*, 2010 WL 918305, at *3. Notably, as the language of this element indicates, a contractor is not required to warn the government of hazards of which it is already aware. *See Walkup*, 2013 WL 5448623, at *7; *Hagen*, 739 F. Supp. 2d at 784.

Dr. Forman's declaration addresses this element. Dr. Forman, a specialist in preventative and occupational medicine and part of a team responsible for reviewing government documents for production in asbestos litigation, has acquired extensive knowledge regarding Navy awareness about the dangers of asbestos. (Forman Declaration at ¶¶ 1, 9-11) In his Declaration, Dr. Forman summarized the Navy's extensive knowledge about those dangers. (*Id.* at ¶¶ 26-55) According to Dr. Forman, the Navy recognized such health hazards as early as 1922, and by the 1940s had outlined steps to prevent exposure to asbestos. (*Id.* at ¶¶ 27, 30-31) Dr. Forman indicates that while the Navy was advised of the hazards associated with asbestos, it rejected offers for assistance with those hazards due to other concerns. (*Id.* at ¶¶ 32-35) The parties have pointed the Court to no evidence in the record to suggest that Crane had any greater knowledge than the Navy regarding the dangers of asbestos.

This evidence, taken in the light most favorable to Crane, constitutes at least a colorable showing that the Navy was already well familiar with the dangers of asbestos in the relevant time period, such that Crane was not obligated to apprise the Navy of these risks. Indeed, several courts have found similar statements by Dr. Forman sufficient to satisfy this prong of the government contractor defense. *See, e.g.*, *Ruppel*, 701 F.3d at 1185; *Shepherd*, 2012 WL 5874781, at *5-6; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, MDL No. 875, E.D. PA

Civil Action No. 2:11-67281-ER, 2012 WL 3155180, at *7 (E.D. Pa. Aug. 2, 2012); *Thompson*, 2012 WL 1344453, at *26-27; *Allen*, 2010 WL 918305, at *3. At this early stage, Crane is not required to *prove* that the Navy had equal or superior knowledge about the hazards of asbestos, and so Dr. Forman's uncontroverted statements are sufficient to meet Crane's burden under the law. *See Vedros*, 2012 WL 3155180, at *7.

Thus, Crane has satisfied the third element of the government contractor defense and, consequently, has established a colorable federal defense pursuant to Section 1442.

## B.    Causal Nexus Between Plaintiff's Claims and Defendants' Conduct Performed Under Color of a Federal Office

The final element of federal officer removal jurisdiction requires the removing defendant to establish a causal nexus between his conduct performed pursuant to the Navy's direction and Plaintiff's failure to warn claims. *Feidt*, 153 F.3d at 127; *Kirks*, 654 F. Supp. 2d at 223. In order for a defendant to do so, he must "by direct averment exclude the possibility that [such conduct] was based on acts or conduct of his not justified by his federal duty." *Mesa v. California*, 489 U.S. 121, 132 (1989) (internal quotation marks and citation omitted); *see also Vedros*, 2012 WL 3155180, at *8. As previously noted, the causal nexus element "is closely related to evidence supporting a colorable federal defense where a government contractor is the defendant because both elements require the defendant [to] show that it acted at the federal government's command." *Hagen*, 739 F. Supp. 2d at 785 (internal quotation marks and citation omitted). Accordingly, "resolving the causal nexus requirement is not difficult in light of the Court's colorability determination because the causal nexus analysis 'is essentially the same as [that associated with] the colorable defense requirement.'" *Id.* (quoting *Prewett*, 2009 WL 2959877, at *7).

24

As discussed above, Crane has a federal defense that any failure to warn on its part relates to the Navy's control over the warnings that Crane could include with, or place upon, valves that it supplied to the Navy. Therefore, the requisite causal connection exists because the liability that Crane faces arises out of its official duties, performed pursuant to a valid government contract. *See id.*; *see also Walkup*, 2013 WL 5448623, at *8. Thus, the Court concludes that Crane satisfied the causal nexus requirement of Section 1442, and consequently has established federal officer removal jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's motion to remand be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:   December 13, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

25