IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARGUERITE MACQUEEN,<br>Individually and as the Surviving Spouse<br>of DAVID MACQUEEN, deceased,<br><br>      Plaintiff,<br><br>v.<br><br>UNION CARBIDE CORPORATION,<br>et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 13-831-SLR-CJB<br>)  Consolidated<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendant Huntington Ingalls Incorporated's ("HII" or "Defendant") Motion to Dismiss for lack of personal jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion"). (D.I. 243) For the reasons set forth below, the Court recommends that Defendant's Motion be GRANTED.

### I. BACKGROUND

#### A. Factual Background

##### 1. The MacQueens

Plaintiff Marguerite MacQueen ("Plaintiff") is acting individually as administratrix of the estate of and as the surviving spouse of decedent, her husband David MacQueen. (D.I. 380 at 4) Plaintiff is a resident of Jackson County, Missouri. (*Id.*) Before passing away from lung cancer allegedly caused by asbestos exposure, Mr. MacQueen was also a resident of Jackson County, Missouri. (*Id.* at ¶¶ 1, 14)

The United States Navy employed Mr. MacQueen from 1956 to 1960. (*Id.* at ¶ 11) During his Naval employment, Mr. MacQueen was allegedly exposed to asbestos while stationed

aboard the attack aircraft carriers U.S.S. Randolph and U.S.S. Independence. (*Id.*)

2. **HII**

Defendant HII is a Virginia corporation with its headquarters in Newport News, Virginia. (Affidavit of Michael J. Helpinstill ("Helpinstill Aff."), D.I. 243, ex. 1 at ¶¶ 1, 5) The company now known as HII was incorporated in Virginia in 1886 as Newport News Shipbuilding and Drydock Company, and went by that name for many years. (*Id.* at ¶ 3) On December 2, 2008, Newport News Shipbuilding and Drydock Company changed its name to Northop Grumman Shipbuilding, Inc. (*Id.*) Thereafter, on April 14, 2011, Northrop Grumman Shipbuilding, Inc. changed its name to HII, the name by which the company is now known. (*Id.*) According to Plaintiff, Newport News Shipbuilding and Drydock Company (the name by which HII was previously known) built the U.S.S. Randolph in Newport News, Virginia. (D.I. 256 at 2)[1]

HII is a shipbuilder that supplies ships to the United States government, and does so through its two unincorporated divisions, Newport News Shipbuilding Division and Ingalls Shipbuilding Division. (Helpinstill Aff. at ¶ 6) HII performs its shipbuilding and manufacturing activities in Virginia, Mississippi, and Louisiana. (*Id.*) HII has never done business in Delaware, has never been licensed to do business in Delaware, has never held any assets in Delaware or kept any bank accounts there, has never marketed its products in Delaware, has never sent agents to Delaware to conduct business, has never designated an agent for service of process in Delaware, and otherwise has never had any other meaningful contact with Delaware. (*Id.* at ¶¶ 7-

---

[1] Plaintiff asserts that the Court can take judicial notice of this fact, and in support of the fact's existence, cites to a Naval treatise, though she does not provide an excerpt of that treatise as an exhibit. (D.I. 256 at 2 & n.2 (citing RAYMOND BLACKMAN, JANE'S FIGHTING SHIPS 1972-73 (1973)). In any event, Defendant does not contest the accuracy of the factual statement, and for purposes of this Report and Recommendation, the Court assumes it to be accurate.

2

14)

### 3. The Newport News Shipbuilding Entities

On June 16, 1965, an Delaware corporation known as Dixemer Petroleum Corporation ("Dixemer") was formed. (D.I. 256, ex. 3 at 6; Affidavit of Michael J. Helpinstill ("Helpinstill Aff. II"), D.I. 258, ex. 1 at ¶ 4) Dixemer later changed its name to Tenneco InterAmerica ("Tenneco"). (Helpinstill Aff. II at ¶ 4) In November 1986, Newport News Shipbuilding and Drydock Company (the entity that would later become HII) became a subsidiary of Tenneco; in October 1996, Tenneco changed its name to Newport News Shipbuilding Inc. ("Newport News Shipbuilding-1"). (*Id.*) Thus, Tenneco (later Newport News Shipbuilding-1), a Delaware corporation, was HII's parent as of November 1986. (*Id.*)

In November 2001, Newport News Shipbuilding-1 merged into a Delaware corporation known as "Purchaser Corp. I" (a corporation that itself had been formed in October 2001). (*Id.* at ¶ 5; D.I. 256, ex. 3 at 9) In January 2002, Purchaser Corp. I changed its name back to Newport News Shipbuilding Inc. ("Newport News Shipbuilding-2," and collectively with Newport News Shipbuilding-1, "Newport News Shipbuilding") (Helpinstill Aff. II at ¶ 5) And so, HHI went from being a subsidiary of Newport News Shipbuilding-1 (through November 2001) to thereafter becoming a subsidiary of Newport News Shipbuilding-2. (*Id.*)

To support her arguments regarding personal jurisdiction, Plaintiff provided a press release attached to an October 2001 Schedule 14D-9 Statement that "Newport News Shipbuilding Inc." filed with the Securities and Exchange Commission (the "October 2001 SEC Filing"). (D.I. 256, ex. 2) In that press release, which was issued to announce that the company had decided not to merge with General Dynamics, Newport News Shipbuilding Inc. states that it

3

"designs and constructs nuclear-powered aircraft carriers and submarines for the U.S. Navy and provides life-cycle services for ships in the Navy fleet" and that it "employs 17,800 people and has annual revenue of approximately $2 billion." (D.I. 256, ex. 2 at 8)

### 4. September 2007 Merger and HII Today

In September 2007, Newport News Shipbuilding-2 merged into HII, and HII thereafter continued to operate as Virginia corporation, as it had since 1886. (Helpinstill Aff. II at ¶¶ 5, 12; D.I. 256, ex. 1 at ¶ 3) Huntington Ingalls Industries Inc. ("HI Industries"), a company incorporated in Delaware on August 4, 2010, is currently the parent company of HII. (Affidavit of Michael J. Helpinstill ("Helpinstill Aff. III"), D.I. 197, ex. A at ¶ 3)

### 5. The Second Newport News Shipbuilding and Drydock Company Entity

In addition to the fact that HII's previous name was Newport News Shipbuilding and Drydock Company, later, a separate entity was incorporated under the same name. (Helpinstill Aff. at ¶ 3; D.I. 256, ex. 3 at 3) On December 5, 2008, that second entity named Newport News Shipbuilding and Drydock Company was formed as a Delaware corporation. (Helpinstill Aff. II at ¶ 7; D.I. 256, ex. 3 at 3) This entity was formed for the sole purpose of maintaining the "Newport News Shipbuilding and Drydock Company" name (since that name, which had been previously used by the entity that is now known as HII, was no longer in use as of December 2, 2008). (Helpinstill Aff. ¶ 3; Helpinstill Aff. II at ¶ 8) This new Delaware corporation does not manufacture any products, does not control or operate HII, has never held HII's assets or liabilities, and is not in any way a reference to HII. (Helpinstill Aff. II at ¶¶ 9-12) In other words, its only connection with HII is that it bears the same corporate name that HII did from 1886 through December 2, 2008.

## B. Procedural History

On March 28, 2013, Plaintiff filed an asbestos-related personal injury action against 55 Defendants in the Superior Court of the State of Delaware. (D.I. 1, ex. 1) On May 10, 2013, Defendants Crane Company and Elliott Company filed respective notices of removal of the case to this Court. (D.I. 1)[2] This consolidated case was later referred to the Court by Judge Sue L. Robinson on September 11, 2013, for the Court to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 152)

One of the Defendants sued in the original Complaint was HI Industries, which Plaintiff listed in the Complaint as "Huntington Ingalls Industries f/k/a Newport News Shipbuilding[.]" (D.I. 1, ex. 1) The Complaint was later amended by the filing of a "Second Amended Complaint[,]" (D.I. 105), and in response, HI Industries filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "the Rule 12(b)(6) motion to dismiss"), (D.I. 197). In the Rule 12(b)(6) motion to dismiss, HI Industries argued that Plaintiff had apparently intended to sue HII, but instead had sued the wrong party (HI Industries); it asserted that there was no basis to allege liability against HI Industries and thus, HI Industries should be dismissed from the case. (*Id.*) Plaintiff, after failing to timely respond to this motion, (D.I. 200), eventually did respond ("the Response") by acknowledging that it had, in fact, sued the wrong party and that it had meant to sue HII, (D.I. 201). As a result, HI Industries was ultimately dismissed from the action. (D.I. 212, 242)

---

[2] Because these two Defendants filed two separate notices of removal, this Court opened two separate actions, Civil Action Nos. 13-831-SLR-CJB and 13-835-SLR-CJB, both entitled *MacQueen v. Union Carbide Corp., et al.* The actions have since been consolidated, and Civil Action No. 13-831 has been designated as the lead case. Citations to docket numbers are to documents that have been filed in the lead case.

5

In the body of the Plaintiff's Response to the Rule 12(b)(6) motion to dismiss, Plaintiff also put forward a separate request for relief: what was, in essence, a motion seeking leave to file, pursuant to Federal Rule of Civil Procedure 15(a)(2), a "Third Amended Complaint" in order to substitute HII for HI Industries. (D.I. 201 at ¶¶ 2-5) Although noting that this request should have been brought in the form of a stand-alone motion, the Court considered the request as if it had, in fact, been properly filed by motion. (D.I. 213 at 3) HI Industries then challenged Plaintiff's attempt to amend the operative complaint at that stage—arguing that amendment would be futile, since personal jurisdiction did not exist as to HII. (D.I. 204 at 1-4). The Court, noting the sparse record that existed as to that question, and citing to case law suggesting that such challenges were better brought by way of a motion to dismiss pursuant to Rule 12(b)(2), granted the Plaintiff's request and permitted it to file the Third Amended Complaint. (D.I. 213 at 5-6) In doing so, the Court noted that its "decision [was] made without prejudice to [HII]'s ability to raise the defense of lack of personal jurisdiction in a later motion to dismiss, filed pursuant to Rule 12(b)(2), if it chooses to do so" and offered "no opinion at this time on the merits of such a motion." (*Id.* at 6) The Third Amended Complaint was then filed on April 1, 2014, with HII now listed as a Defendant. (D.I. 217)

HII then filed the instant Motion. (D.I. 243) In its responsive brief, Plaintiff contends that she has made a sufficient showing to warrant denial of the Motion, or, in the alternative, that the Court should permit jurisdictional discovery of HII on the question. (D.I. 256) The Motion was fully briefed on June 30, 2014. (D.I. 258)[3]

---

[3] Plaintiff, without objection, later filed a Fourth Amended Complaint to correct certain other minor inaccuracies in the case caption. (D.I. 364, 370, 380) The Fourth Amended Complaint too lists HII as a Defendant. (D.I. 380)

6

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction, and must make a *prima facie* showing that personal jurisdiction exists. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008); *see also Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014). In reviewing a motion to dismiss for lack of personal jurisdiction, the Court must accept all of a plaintiff's factual allegations as true and construe disputed facts in its favor. *Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 972 (D. Del. 2013); *Power Integrations*, 547 F. Supp. 2d at 369; *see also Hardwire*, 2014 WL 5144610, at *5.

In order to establish personal jurisdiction in the face of a challenge like that at issue here, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire*, 2014 WL 5144610, at *6. In analyzing the statutory prong, the Court must consider whether the defendant's actions fall within the scope of Delaware's long-arm statute. *Id.*; *Power Integrations*, 547 F. Supp. 2d at 369. In analyzing the constitutional prong, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### B. Jurisdictional Discovery

As a general matter, "jurisdictional discovery should be allowed unless the plaintiff's claim [of personal jurisdiction] is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am.*

7

*Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (citations omitted); *accord Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (citations omitted). Any such consideration "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995). If a plaintiff makes factual allegations that suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity, the court should order jurisdictional discovery. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *Power Integrations, Inc.*, 547 F. Supp. 2d at 369.

However, a court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, "[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in this forum." *Hansen*, 163 F.R.D. at 475; *accord Draper, Inc. v. MechoShade Sys., Inc.*, No. 1:10-cv-01443-SEB-TAB, 2011 WL 1258140, at *1 (S.D. Ind. Mar. 31, 2011) ("While courts have the power to grant jurisdictional discovery, a motion to dismiss for lack of personal jurisdiction does not automatically trigger a right to jurisdictional discovery."). If a plaintiff does not come forward with "*some* competent evidence" that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. *Hansen*, 163 F.R.D. at 475 (emphasis in original). Put another way, a plaintiff may not undertake a "fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma*, 623 F.3d at 157; *see also Mass. Sch. of Law*, 107 F.3d at 1042 (noting that a mere "unsupported allegation" that the prerequisites for personal jurisdiction have been met would amount to a "'clearly frivolous'"

8

claim, and would not warrant the grant of jurisdictional discovery) (citations omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

As is noted above, in the face of a challenge to personal jurisdiction, the Court must first assess whether Plaintiff has made a *prima facie* showing that HII's actions fall within the scope of Delaware's long-arm statute and of constitutional due process.

#### 1. Alter Ego Theory

In the Fourth Amended Complaint,[4] as to HII, Plaintiff makes reference to the long-arm statute, Del. Code Ann. tit. 10 § 3104(c) (2010 Supp.) ("Section 3104(c)"), only once, when it asserts HII "is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104 (c)[.]" (D.I. 380 at ¶ 4) The Fourth Amended Complaint also asserts, as to personal jurisdiction over HII, that "jurisdiction against [HII] including [sic] is predicated on the fact that [it] supplied a ship which [it] knew or should have known would travel throughout the world including but not limited to Delaware." (*Id.*) In her responsive brief, Plaintiff never once makes reference to the long-arm statute, nor to case law regarding the Due Process Clause. (D.I. 256) Indeed, when stripped of its recitation of the procedural history as to this issue, the brief contains very, very little substantive discussion as to why Plaintiff has sufficiently demonstrated that personal jurisdiction exists. (*Id.*)

Indeed, Plaintiff makes only one argument in her brief that actually goes to that question. Her argument is a multi-step one, and is as follows:

---

[4] The content of the Third and Fourth Amended Complaints do not differ as to their allegations regarding HII, and so for ease of reference, the Court hereafter will simply refer to the content of the most recently filed complaint of record, the Fourth Amended Complaint.

9

(1) The evidence of record demonstrates that Newport News Shipbuilding-1 (i.e., the entity of that name, which was originally named Dixemer, and then Tenneco, before becoming Newport News Shipbuilding-1) was a Delaware corporation, and existed from June 1965 through November 2001, and that Newport News Shipbuilding-2 (i.e., the entity of that name, which was originally named Purchaser Corp. I, before becoming Newport News Shipbuilding-2) was also a Delaware corporation and existed from October 2001 through September 2007;

(2) Newport News Shipbuilding (i.e., both Newport News Shipbuilding-1 and then later Newport News Shipbuilding-2) were at different times the parent corporation of HII (i.e., the entity of that name, which was originally named Newport News Shipbuilding and Drydock Company, and then Northrop Grumman Shipbuilding, Inc., before being re-named HII) from 1986 through September 2007;

(3) Newport News Shipbuilding-2 was responsible for the October 2001 SEC Filing, in which it states that it "designs and constructs nuclear-powered aircraft carriers and submarines for the U.S. Navy and provides life-cycle services for ships in the Navy fleet[,]" (D.I. 256, ex. 2 at 7) in Newport News, Virginia;[5] and

(4) The October 2001 SEC Filing is thus an "admission by Newport News Shipbuilding [] . . . that it is an **alter ego** of Newport News Shipbuilding and Drydock Company [i.e., the entity that later became HII, and which was manufacturing Navy ships in Newport News, Virginia at that time]."

(D.I. 256 at 5 (emphasis in original)). In other words, Plaintiff's only argument as to why there is

---

[5] In its reply brief, Defendant asserts that Newport News Shipbuilding-2 was the entity that sent out this press release, which is dated October 26, 2001. (D.I. 258 at 2) Newport News Shipbuilding-2 did exist as of October 11, 2001, though according to an affidavit submitted by Defendant, it was then known as Purchaser Corp. I and would not come to be renamed "Newport News Shipbuilding Inc." until January 2002. (Helpinstill Aff. II at ¶ 5) Newport News Shipbuilding-1, however, was also still in existence as of October 26, 2001, and would not merge with Purchaser Corp. I until November 2001. (*Id.*) Regardless, whether the entity that issued this press release was Newport News Shipbuilding-1 or Newport News Shipbuilding-2 does not impact the Court's decision herein. For purposes of the discussion set out herein, the Court will refer to Newport News Shipbuilding-2 as the entity that sent this press release.

personal jurisdiction over HII is that Newport News Shipbuilding-2 was a Delaware corporation, and since (1) personal jurisdiction exists over Delaware corporations; and (2) Newport News Shipbuilding-2 was the alter ego of HII; then (3) personal jurisdiction exists as to HII too.

Delaware courts have "rather strictly" applied the alter ego theory of personal jurisdiction, using an analysis similar to that used in determining whether to pierce the corporate veil. *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 307 (Del. Ch. 1999); *see also Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (noting that Delaware courts will only disregard the corporate form in the "'exceptional case'") (citation omitted). In the cases when the alter ego doctrine has been applied, these courts have examined the record for two critical elements:

> 1) that the out-of-state defendant over whom jurisdiction is sought has no real separate identity from a defendant over whom jurisdiction is clear based on actual domicile or satisfaction of Delaware's long-arm statute; and 2) the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant and which satisfy the long-arm statute and/or federal due process requirements.

*HMG/Courtland Props., Inc.*, 729 A.2d at 307-08; *see also Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 506 (D. Del. 2003) (looking to Delaware state law in assessing the applicability of the alter ego theory as it relates to establishing personal jurisdiction over a defendant).[6] The corporate veil is generally pierced only "in the interest of justice, when such matters as fraud,

---

[6] The Court focuses below on the first element of this test—i.e., whether HII had no real separate identity from its parent. However, it is worth noting that Plaintiff has pointed to no specific acts taken in Delaware by either of the Newport News Shipbuilding entities (or HII), other than the Delaware incorporation of the Newport News Shipbuilding entities, and there is authority from our Court indicating that in such a circumstance, Plaintiff could not meet the second element of this test. *Reach & Assocs., P.C.*, 269 F. Supp. 2d at 506-07.

11

contravention of law or contract, public wrong, or equitable consideration among members of the corporation, are involved." *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) ("Under the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown."). In assessing whether to disregard the corporate form, Delaware courts look to whether there has been an element of fraud, and also consider factors such as whether: (1) the subsidiary is adequately capitalized; (2) it is solvent; (3) corporate formalities were observed; (4) a controlling shareholder siphoned company funds; and (5) in general, the subsidiary simply functioned as a facade for the controlling shareholder. *Case Fin., Inc.*, 2009 WL 2581873, at *4; *Sprint Nextel Corp. v. iPCS, Inc.*, Civil Action No. 3746-VCP, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008). There are at least two reasons why Plaintiff has not properly invoked the alter ego theory on the record here.

First, and at the most basic level, the invocation of the alter ego theory would not assist Plaintiff, because Newport News Shipbuilding-2 (the entity that is said to have been the corporate alter ego of HII) does not exist, and has not existed since September 2007, when it merged into HII. When courts assess whether there is personal jurisdiction over a party (e.g., by engaging in a "minimum contacts" analysis), they typically do so by examining whether jurisdiction exists either at the time the cause of action arose, the time the suit was filed, or within a reasonable time prior to the filing of the lawsuit. *See, e.g., Johnson v. Woodcock*, 444 F.3d 953, 955-56 (8th Cir. 2006); *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 530 F. Supp. 2d 1008, 1016-17 (N.D. Ill. 2008); *see also Phila. Prof'l*

*Collections, LLC v. Young*, Civil Action No. 10-cv-00724, 2010 WL 5257651, at *3 & n.51 (E.D. Pa. Dec. 22, 2010) (refusing to consider, in engaging in a personal jurisdiction analysis regarding a suit filed in 2010, contacts relating to a party that had been discussed by another court in a prior suit, where those contacts dated from 2006 or before). Plaintiff does not explain how utilization of the alter ego theory is appropriate here to satisfy the personal jurisdiction inquiry, where it is undisputed that Newport News Shipbuilding-2 has not been HII's parent for nearly a decade prior to the filing date of this suit.

Second, even if for some reason the above analysis is incorrect, Plaintiff has not sufficiently demonstrated that the record evidence supports utilization of the alter ego theory. That is, Plaintiff puts forward a notable lack of evidence from which the Court could conclude that Newport News Shipbuilding-2 (or, for that matter, Newport News Shipbuilding-1) had "no real separate identity from" HII and its predecessors-in-name, or that the circumstances relating to the association between those entities and HII sound in fraud or inequity. There is literally no evidence of record regarding, for example, HII's capitalization, its solvency, whether it shared officers or directors with its former parent, whether it otherwise observed corporate formalities distinguishing it from the parent, whether the parent misused its funds, or whether in any other way HII functioned as a "facade" for the parent under controlling law. And there is no allegation, let alone citation to evidentiary proof, to suggest that there was fraud or its equivalent afoot in the relationship amongst the two entities.

The *only* evidence that Plaintiff has pointed to at all in support of the theory is the content of the press release attached to the October 2001 SEC Filing. She asserts that because in the release, Newport News Shipbuilding-2 stated, *inter alia*, that it "designs and constructs" aircraft

13

carriers for the U.S. Navy, (D.I. 256, ex. 2 at 8), this amounts to an "admission" that it "was responsible for the huge shipbuilding operation [of HII] in Newport News, VA[,]" (D.I. 256 at 5). Yet as Defendant notes, a statement like this in an SEC filing—in which a parent corporation is in some way consolidating by description its subsidiary's efforts and its own—is not atypical, and certainly does not suggest that, via fraud or its equivalent, the parent corporation has become indistinguishable from the subsidiary. *Cf. In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570-71 (M.D. Pa. 2009) (finding that alter ego theory could not be invoked, where, *inter alia*, statements in annual reports indicated that corporate parents and subsidiaries cultivated a "unified global image[,]" as the evidence failed to demonstrate "the corporate parents' actual control over the daily affairs of their subsidiaries"); *Calvert v. Huckins*, 875 F. Supp. 674, 678-79 (E.D. Cal. 1995) (rejecting alter ego theory and noting that consolidating the activities of a subsidiary into a parent's annual reports is a "common business practice"); *Case Fin., Inc.*, 2009 WL 2581873, at *4-5 (rejecting alter ego theory where a parent filed consolidated financial statements with the SEC, which included the subsidiary's results).

For these reasons, Plaintiff has failed to make out a *prima facie* case—or anything close to one—that it could satisfy the requirements of the Delaware long-arm statute (or for that matter, the requirements of due process) by invoking the alter ego theory. *See, e.g., C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (finding alter ego doctrine inapplicable where the plaintiff had not produced any evidence of fraud in the corporate structure of the subsidiary and the parent, and did not claim that the two entities had ignored the formalities of separate corporate status); *Pauley Petroleum*, 239 A.2d at 633 (refusing to find that a parent corporation should be treated as the alter ego of its subsidiary where there was no showing in the

14

litigation of fraud or of the other elements that would authorize the disregard of the separate corporate entities).

### 2. HII's Own Actions/Contacts

Although Plaintiff does not argue it in its briefing, for the sake of completeness, the Court considers whether there is any evidence that as to HII itself, the requirements of the Delaware long-arm statute or due process have been satisfied. There is not.

As to the Delaware long-arm statute, there is no evidence to suggest that HII could satisfy subsections (c)(1), (2) or (3), all of which require a showing of specific jurisdiction. *See Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d. 541, 545 (D. Del. 2012). That is, the invocation of these statutory sections "require[s] a 'nexus' between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction." *Telcordia Techs., Inc. v. Alcatel S.A.*, No. Civ.A 04-847 GMS, 2005 WL 1268061, at *2 (D. Del. May 27, 2005). The statutory language is as follows:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State . . . .

10 Del. C. § 3104. There is no allegation or evidence that as to Plaintiff's asbestos-related causes of action, any of these three subsections could be met. It is not clear whether Plaintiff was attempting to satisfy one of these subsections with its assertion in the Fourth Amended

15

Complaint that HII "supplied a ship which [it] knew or should have known would travel throughout the world including but not limited to Delaware." (D.I. 380 at ¶ 4) But with no evidence indicating what "ship" Plaintiff is talking about, whether any such ship did, in fact travel to Delaware, or what that has to do with the claims at issue, the reference becomes a nullity. And indeed, Plaintiff does not make reference to this statement in its briefing.

Nor is there any evidence to suggest that HII fits within the bounds of subsection (c)(4) of the Delaware long-arm statute, which provides for general jurisdiction. *See Reach & Assocs.*, 269 F. Supp. 2d at 505. Although the subsection authorizes jurisdiction even when the tortious acts and the injury occurred outside of Delaware, the defendant or its agent must still be "'generally present'" in the state. *Id.* As stated in this subsection, a general presence requires that the defendant or its agent "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.]" 10 Del. Code § 3104(c)(4). "While seemingly broad, the standard for general jurisdiction is high in practice and not often met." *Reach & Assocs.*, 269 F. Supp. 2d at 505.

The record is clear that HII is, and has been for its existence, a Virginia corporation.[7] And there is no evidence of record that indicates that HII has done or currently does any business

---

[7] Plaintiff did provide an exhibit from the Delaware Department of State showing that a "Newport News Shipbuilding and Dry Dock [sic] Company" was incorporated in Delaware on December 5, 2008. (D.I. 256 at 5 n.6 & ex. 3 at 3) Although that corporate name is the same one as the name that HII went by from 1886 to 2008, the record is now clear that the entity incorporated on December 5, 2008 is a different, separate entity that is not connected to HII or its operations—one established only to preserve a corporate name that was no longer being used by the entity that later became HII. (Helpinstill Aff. ¶ 3; Helpinstill Aff. II at ¶ 8-12)

16

in Delaware, engages in any conduct in the State or derives revenue from in-State activity.[8]
Indeed, the entirety of the evidence on this point, provided by HII, is that it has no such contacts with Delaware. (*See, e.g.*, Helpinstill Aff. at ¶¶ 7-14)

Since Plaintiff could not satisfy the requirements of the Delaware long-arm statute as to HII, there is no need to separately address whether due process could be satisfied. But as a practical matter, because the Delaware long-arm statute confers the identical scope of jurisdiction as does the Due Process Clause, asserting personal jurisdiction over HII would offend due process for the same reasons as described above. *See Registered Agents, Ltd.*, 880 F. Supp. 2d. at 547.

### B. Jurisdictional Discovery

The Court has above articulated how Plaintiff has come forward with a paucity of evidence to suggest, under any theory, how there is personal jurisdiction over HII. Its inability to put forward "*some* competent evidence" that personal jurisdiction over HII might exist, *Hansen*, 163 F.R.D. at 475, leads to the inevitable conclusion that its request for jurisdictional discovery is the equivalent of a "fishing expedition[.]" *Eurofins Pharma*, 623 F.3d at 157. Put a different way, as to even the one theory (the alter ego theory) that Plaintiff presses in her briefing, the Court has no real meaningful evidence to suggest the theory would or should apply. In such a case, jurisdictional discovery on the question would be premised on little more than

---

[8] The fact that in the Fourth Amended Complaint, Plaintiff asserted, without any factual specificity in support, that HII "is a foreign business entity doing business in the State of Delaware[,]" (D.I. 380 at ¶ 4), is insufficient to provide any support for jurisdiction here. *See Reach & Assocs.*, 269 F. Supp. 2d at 505 ("Thus, the Court concludes Plaintiffs' recitation of the standard for the Delaware long-arm statute in their Complaint, without any factual specificity as to the acts that support such an allegation, is not sufficient to confer jurisdiction under Subsection (c)(4) of the Delaware long-arm statute."); *see also Hansen*, 163 F.R.D. at 476.

speculation—and speculation is an insufficient basis on which to order such relief. *See Mass. Sch. of Law*, 107 F.3d at 1042.

## IV. CONCLUSION

For the reasons set out above, the Court recommends that HII's Motion be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: December 3, 2014

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE