IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARGUERITE MACQUEEN, )
individually and as the surviving spouse )
of DAVID MACQUEEN, deceased, )
)
      Plaintiffs, )
)
v. ) Civ. No. 13-831-SLR/CJB
)
HUNTINGTON INGALLS )
INCORPORATED, et al., )
)
      Defendants. )

**MEMORANDUM**

At Wilmington this 30th day of September, 2015, having reviewed the objections filed to the December 3, 2014 Report and Recommendation issued by Magistrate Judge Christopher J. Burke, as well as the supplementary papers filed after the completion of limited jurisdictional discovery; I will affirm the recommendation that the motion to dismiss for lack of personal jurisdiction filed by defendant Huntington Ingalls Incorporated be granted, as discussed below.

1. **Background.** The case was brought by plaintiff, Marguerite MacQueen ("plaintiff"), a widow whose now deceased husband was allegedly exposed to asbestos while employed by the United States Navy from 1956 to 1960 aboard the attack aircraft carriers U.S.S. Randolph and U.S.S. Independence. According to plaintiff, Newport News Shipbuilding and Drydock Company (the name by which defendant Huntington Ingalls Incorporated, "HII," was previously known) built the U.S.S. Randoph in Newport

News, Virginia. It is undisputed that HII is a shipbuilder that supplies ships to the United States government, and does so through its two unincorporated divisions, Newport News Shipbuilding Division and Ingalls Shipbuilding Division. HII performs its shipbuilding and manufacturing activities in Virginia, Mississippi, and Louisiana. As this court has noted before, HII has a convoluted corporate history, with multiple mergers and name changes over the course of its long history. (*See, e.g.,* D.I. 512 at 3-5) In recommending dismissal of HII, the history provided by HII's affiant (Michael Helpinstill) was accepted without the benefit of vetting the averments through discovery.[1]

2. **Analysis.** Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed.R.Civ.P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

---

[1] HII apparently did not participate in the normal course of discovery because of its motion to dismiss, and did not meaningfully comply with the court's instructions concerning the follow-up deposition of Michael Helpinstill, whose affidavit was the primary source of information in the Report and Recommendation.

2

3. To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. See id. at 66; Reach & Assocs. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. See Reach & Assocs., 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. See id.; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

4. Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C. § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State.

10 Del. C. § 3104(c)(1)-(4). With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction. See Shoemaker v. McConnell, 556 F. Supp. 2d 351, 354, 355 (D. Del. 2008). Subsection (4) confers general jurisdiction, which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. See Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1466 (D. Del. 1991).

3

5. If defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities with the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). "To exercise general jurisdiction over a corporation, the corporation's affiliations with the forum must 'render [the corporation] essentially at home in the forum.'" *Hendricks v. New Video Channel Am., LLC,* 2015 WL 3616983 (C.D. Cal. June 8, 2015), at *2 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)).[2] "The 'paradigm' of a corporation's 'home' is its place of incorporation and its principal place of business, but a corporation may be subject to general jurisdiction elsewhere in [the] 'exceptional case' where a 'corporation's operations in a forum . . . [are] so substantial and of such a nature as to render the corporation at home in that State.'" *Hendricks*, 2015 WL 3616983, at *2.

6. The record as it stands[3] indicates that HII is incorporated and has its principal place of business in Virginia. HII, which has had three name changes since its incorporation in 1886, has had three Delaware corporate parents: (1) Newport News Shipbuilding-1 (which itself has had three name changes and existed from June 1965 through November 2001); (2) Newport News Shipbuilding-2 (which has had two name changes and existed from October 2001 through September 2007); and (3) Huntington

---

[2]Given that plaintiff's cause of action does not arise from HII's contacts with Delaware, the court will not address specific jurisdiction.

[3]*See* D.I. 512 at 4, 10; D.I. 573 at 6-10; D.I. 574 at 4-6.

4

Ingalls Industries, Inc. ("HI Ind."), which was incorporated in August 2010. HII is a subsidiary and guarantor of obligations and debts of HI Ind.. HI Ind. has no employees; instead, HII employees do all the work for HI Ind. (including accounting activities) and are compensated for such through a financial adjustment or accounting adjustment between the two companies. In addition to "shared" employees, there are two "shared" corporate officers between HII and HI Ind., out of a total of over 35 HII officers. The employees of HII are governed by the code of ethics and business conduct promulgated by HI Ind.. At least Mr. Helpinstill, who claims to be an employee of HII's Newport News Shipbuilding Division, is partially compensated through HI Ind. stock. HII has had shipbuilding suppliers in all 50 states. HI Ind.'s 2011 annual report uses such language as "our divisions" and "our subsidiaries" when, in fact, the "divisions" are subsidiaries of HII.

7. In weighing the record evidence (which cannot be characterized as a robust one, for lack for full jurisdictional discovery) against the current standard for determining whether personal jurisdiction can be exercised over a nonresident corporation (which standard has not yet been fully illuminated post-*Daimler*), I conclude that plaintiff has failed to carry her burden of persuasion, even if (as plaintiff suggests) I do not engage in an alter ego analysis. In other words, even if I embrace a theory of general jurisdiction based on HII's contacts with Delaware through its parent HI Ind., and set aside such requirements as the corporate form being used for a fraudulent purpose,[4]

---

[4] *See, e.g., Boston Scientific Corp. v. Wall Cardiovascular Technologies, LLC*, 647 F. Supp. 2d 358 (D. Del. 2009).

the contacts of record are insufficient to pass muster under either the Delaware long-arm statute[5] or under *Daimler*.[6]

8. **Conclusion.** For the above reasons, I will accept the Report and Recommendation and grant defendant HII's motion to dismiss. (D.I. 243) However, given the procedural history of this case (resulting in HII never having participated in discovery), and in the interests of having a more complete record before judgment on the merits of plaintiff's claims is entered, I will further order the following: (1) the pending motions for summary judgment (D.I. 433, 444, 460, and 462) are denied without prejudice to renew; (2) plaintiff shall have 120 days in which to pursue third-party discovery as to product identification against HII, and follow-up discovery against the remaining defendants; (3) renewed and supplemented motions for summary judgment may be filed thereafter. An order shall follow.

    　　　　　　　　　　　　　　　　　　／s／
    　　　　　　　　　　　　　　　　United States District Judge

---

[5] *See, e.g.,* 10 Del. C. § 3104(c)(4), requiring that a non-resident "engage[ ] in [a] persistent course of conduct in the State."

[6] *See, e.g., Hendricks*, where the district court exercised personal jurisdiction over a non-resident parent corporation when its subsidiary was incorporated and had its principal place of business in California, and the parent called the California subsidiary its "LA office," listed the California address as one of its own, was controlled by the same individuals, and both corporations were in the same business. 2015 WL 3616983, at *3. Such facts - public by nature - are distinguishable from the ones at bar.