## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE MACQUEEN, | ) | |
| Individually and as the Surviving Spouse | ) | |
| of DAVID MACQUEEN, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-831-SLR-CJB |
| | ) | Consolidated |
| UNION CARBIDE CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Presently pending before the Court are three separate motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 (the "Motions"), filed by remaining Defendants Crane Co. ("Crane"), (D.I. 444), Warren Pumps LLC ("Warren"), (D.I. 460), and Air & Liquid Systems Corporation ("Buffalo"[1]), (D.I. 462). For the reasons set forth below, the Court recommends that Warren's Motion be GRANTED, and that Crane's and Buffalo's respective Motions be GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND[2]

In this matter, Plaintiff is acting individually as administratrix of the estate and as the surviving spouse of the decedent, her husband David MacQueen ("Mr. MacQueen" or "Decedent"). (D.I. 380 at 4) On March 28, 2013, Plaintiff filed suit in the Superior Court of

---

[1]    Air & Liquid Systems Corporation is the successor by merger to Buffalo Pumps, Inc. (*See, e.g.*, D.I. 62 at 1 n.1)

[2]    Some of the specific procedural history of this case, as it relates to these Motions, is set out in further detail in the "Discussion" section below. The Court therefore lists here a short summary of that procedural history.

Delaware, in and for New Castle County, naming over 50 Defendants. (D.I. 1, ex. 1) On May 10, 2013, Crane and another Defendant, Elliott Company ("Removing Defendants"), each filed respective notices of removal in this Court. (D.I. 1; D.I. 1, Civil Action No. 13-835-SLR-CJB)[3] After the cases were consolidated, they were later referred to the Court by Judge Sue L. Robinson on September 11, 2013, for the Court to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 152; *see also* D.I. 580)

On September 30, 2014, Plaintiff filed the operative complaint, which is the Fourth Amended Complaint. (D.I. 380) Plaintiff therein asserted state law causes of action based on or related to Mr. MacQueen's alleged exposure to asbestos and asbestos-containing products while Mr. MacQueen was employed: (1) by the United States Navy aboard the U.S.S. Randolph and the U.S.S. Independence from 1956 to 1960; and (2) as a salesman by Union Carbide Corporation from approximately 1963 to 1980. (*Id.* at ¶ 11) Crane, Warren, and Buffalo are the three remaining Defendants in the case, with the other Defendants having all claims/cross-claims against them dismissed by stipulation or otherwise. Each of the three remaining Defendants are manufacturers of equipment that Plaintiff alleges was aboard the U.S.S. Randolph or U.S.S. Independence; Plaintiff alleges this equipment contained asbestos, to which Mr. MacQueen was exposed. (*See, e.g.,* D.I. 535 at 17-18; D.I. 536 at 17-18; D.I. 537 at 17-18)[4]

---

[3]     Because Removing Defendants filed two separate notices of removal, this Court opened two separate actions, Civil Action Nos. 13-831-SLR-CJB and 13-835-SLR-CJB, both entitled *MacQueen v. Union Carbide Corp., et al.* The actions have since been consolidated, and Civil Action No. 13-831-SLR-CJB has been designated as the lead case. Unless otherwise noted, citations to docket numbers are to documents that have been filed in the lead case.

[4]     Plaintiff's respective answering briefs to each of the three Defendants' Motions are substantially similar. (*See* D.I. 535; D.I. 536; D.I. 537) Hereinafter, when referring to a proposition that is set out in all three of these briefs, the Court will cite to D.I. 535.

The Fourth Amended Complaint includes counts of negligence (Count IV), (D.I. 380 at ¶¶ 26-31), strict liability (Count V), (*id.* at ¶¶ 32-39), willful and wanton conduct (Count VI), (*id.* at ¶¶ 40-47), conspiracy (Count VII), (*id.* at ¶¶ 48-56), and loss of consortium (Count VIII), (*id.* at ¶¶ 57-58).[5]  Plaintiff demands a judgment for damages against all Defendants jointly and severally, as well as punitive damages from each Defendant. (*Id.* at 34)

On October 17, 2014, Crane, Warren, and Buffalo filed the instant Motions, seeking summary judgment as to all pending claims on product identification and nexus grounds. (D.I. 444; D.I. 460; D.I. 462)  Briefing on the Motions was stayed on November 18, 2014, to allow for the prior resolution of another related motion. (*See* D.I. 529 at 6 n.4)  Thereafter, briefing on the Motions resumed, and it was complete as of February 6, 2015. (D.I. 543; D.I. 544; D.I. 545)  The parties also later provided letters discussing supplemental authority. (D.I. 566; D.I. 571)

The Court originally scheduled oral argument on the Motions for June 24, 2015.  But on June 16, 2015, the Court postponed oral argument at Plaintiff's request, (D.I. 567), ordering that argument would instead be scheduled after a forthcoming ruling by the District Court on a related motion.  The District Court later ordered that discovery in the case be re-opened, in order to allow Plaintiff the ability to pursue third-party discovery as to product identification and nexus from former Defendant Huntington Ingalls Incorporated, (D.I. 580); this, in turn, caused the

---

[5]     Counts I and II of the Fourth Amended Complaint largely contain factual allegations that are relevant to the remainder of the pleading; they do not appear intended to allege stand-alone causes of action. (*See, e.g.*, D.I. 609 at 1-2)  And Count III (titled "Employer Liability"), (D.I. 380 at ¶¶ 18-25), was clearly pleaded only against Mr. MacQueen's former employer, Union Carbide Corporation, which has been dismissed as a Defendant. (D.I. 282)  All of the parties appear to agree with this summary of Counts I-III, (D.I. 606-07; D.I. 609-10).  As a result, hereafter, the Court will only discuss Counts IV through VIII of the Fourth Amended Complaint, which are the only independent causes of action that are alleged by Plaintiff to be asserted against each of the remaining Defendants.

Court to issue a revised Scheduling Order in the case, (D.I. 584). That revised Scheduling Order permitted the parties—after the third-party discovery period was complete—to submit renewed and/or supplemented summary judgment motions on product identification and nexus. (*Id.* at ¶ 11) Those renewed and/or supplemented motions were initially due by July 1, 2016, (*id.*), a deadline that was later extended to August 5, 2016, (D.I. 596 at 9). On August 1, 2016, Plaintiff and the remaining Defendants filed a stipulation, in which (1) they each stated their request that briefing on the Defendants' originally-filed Motions be deemed submitted for purposes of the new case-dispositive motions deadline, and (2) Plaintiff sought oral argument on those Motions. (D.I. 601)

The Court then held oral argument on the Motions on January 10, 2017. Thereafter, the Court sought additional letter briefing from the parties on a discrete issue, which the parties filed on January 18, 2017. (D.I. 606-07; D.I. 609-10)

## II.    STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party has sufficiently demonstrated the absence of a genuine dispute of material fact, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as

a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the

Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must

"do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. United States Postal Service*, 409 F.3d 584,

594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue")

(internal quotation marks and citation omitted). The "mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter

the outcome are "material," and a factual dispute is "genuine" only where "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the

evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted). A party asserting that a fact cannot be—or,

alternatively, is—genuinely disputed must support the assertion either by citing to "particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for the purposes of the

motion only), admissions, interrogatory answers, or other materials"; or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III.    DISCUSSION

The key issue raised by the Motions is whether Plaintiff can establish the existence of a genuine issue of material fact as to causation—that is, as to whether there is a nexus between his work on the two ships referenced above and his work with any asbestos-containing product for which any or all of the three remaining Defendants could be held responsible. (D.I. 445 at 2; D.I. 461 at 5; D.I. 463 at 1)  In a products liability action under maritime law,[6] such as this one, a plaintiff proceeding under either a negligence and/or strict liability theory must establish causation by showing, "for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *see also Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353, at *4 (D. Del. June 4, 2014), *adopted by* 2014 WL 4447568 (D. Del. Sept. 8, 2014). Relatedly, a manufacturer "is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012); *see also Walkup*, 2014 WL 2514353, at *4.[7]

---

[6]      The parties do not dispute that maritime law applies to Plaintiff's claims. (*See, e.g.*, D.I. 535 at 14; D.I. 543 at 4; D.I. 544 at 2; D.I. 545 at 3)

[7]      At oral argument, Plaintiff stated that two of the three Defendants did not cite to this proposition of law, which is sometimes referred to as the "bare-metal defense," *see Conner*, 842 F. Supp. 2d at 793 n.2, until their reply briefs. (Transcript of January 10, 2017 Oral Argument ("hereinafter, "Tr.") at 53)  As an initial matter, the Court disagrees with this

6

Defendants argue that Plaintiff cannot demonstrate that a genuine issue of material fact exists as to causation.  Plaintiff disagrees, arguing both that Defendants have not done enough to shift the burden of production to her at the summary judgment stage, (*see, e.g.*, D.I. 535 at 9), and that, in any event, she has presented sufficient circumstantial evidence to survive Defendants' summary judgment Motions, (*see, e.g.*, *id.* at 19).

### A.   Whether Defendants Have Shifted the Burden to Plaintiff

As to a summary judgment motion, "the moving party bears the initial burden of showing the absence of a genuine issue of material fact[.]"  *Haskins v. Christiana Care Health Servs.*, 701 F. Supp. 2d 623, 627 (D. Del. 2010).  Plaintiff argues that each Defendant has not met this burden, such that she need not even demonstrate that a genuine issue of fact exists for this case to

---

statement.  In its opening brief in support of its Motion, Crane explicitly cites *Conner* for the proposition that "[t]o succeed on her claims against Crane Co., Plaintiff would need to demonstrate that Mr. MacQueen worked with or around asbestos-containing component parts (packing or gaskets) *actually made or sold by Crane Co.*"  (D.I. 445 at 5 n.1 (emphasis added) (citing *Conner*, 842 F. Supp. 2d at 801))  Similarly, Buffalo states in its opening brief that "a majority of federal courts have held that, under maritime law, an equipment manufacturer cannot be held liable for products it did not manufacture[] or distribute."  (D.I. 463 at 5 (citations omitted))  And Warren at least implicitly identified this requirement when it argued that there is no evidence, "testimonial or otherwise, to suggest that decedent was exposed to asbestos by any product *manufactured, sold, or distributed by Warren.*"  (D.I. 461 at 5 (emphasis added))

Additionally, it is worth noting that, as the *Conner* Court explained, "the 'bare-metal defense[]' . . . is more properly understood . . . as a challenge to a plaintiff's prima facie case to prove duty or causation."  *Conner*, 842 F. Supp. 2d at 793 n.2.  The test for causation set out above requires that a plaintiff be exposed to a *defendant's product*; the "bare-metal defense" relates to a challenge to the plaintiff's proof on that score—one that implicates the question of what *does it mean* to be a "defendant's product" (i.e., that this must be a product that the defendant manufactured or distributed).  *See Abbay v. Armstrong Int'l, Inc.*, MDL No. 875, Civil Action No. 2:10-CV-83248-ER, 2012 WL 975834, at *1 n.1 (E.D. Pa. Feb. 29, 2012).  If Plaintiff cannot demonstrate that a genuine issue of material fact exists as to whether Mr. MacQueen was exposed to a product manufactured or distributed by a particular Defendant, then that Defendant's Motion must be granted.

move forward. (D.I. 535 at 9)  The Court disagrees with Plaintiff.

Defendants cannot, of course, prove the non-existence of a fact.  Rather, a defendant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325) (certain quotation marks omitted).  That is exactly what all three Defendants have done through their briefing on the instant Motions.

Two of the Defendants (Warren and Buffalo) did so by not only citing the appropriate standard for establishing causation, but then by offering detailed citations to the content of the depositions of Plaintiffs' three product identification witnesses (Grover Garrant, Douglas Mitchell and Delas Strode).  For example, Warren devotes over two pages of its opening brief to descriptions of the deposition testimony of Mr. Garrant, Mr. Mitchell and Mr. Strode, pointing out how their answers could not serve to create a genuine issue of material fact as to whether Mr. MacQueen had any interaction with a Warren pump on either of the two ships at issue.  (D.I. 461 at 6-9)  Warren concludes by asserting that "[t]here has been no evidence, testimonial or otherwise, in support of the proposition that decedent David MacQueen worked with or around an asbestos-containing product for which Warren is legally responsible." (*See id.* at 9; *see also* D.I. 537 at 9 (Plaintiff acknowledging that Warren's opening brief did "cite to portions of the record of this case"))  Similarly, Buffalo also cites to the standard for showing causation, and then cites repeatedly to portions of the three witnesses' deposition testimony, all in order to show that "Plaintiff has not produced any evidence that Mr. MacQueen was exposed to asbestos-containing product for which Buffalo is responsible during his service in the U.S. Navy, or, for

8

that matter, during any subsequent employment." (*See* D.I. 463 at 1-2; *see also* D.I. 536 at 9

(Plaintiff acknowledging that Buffalo's opening brief did "cite to portions of the record of this

case" in support of its Motion)) Thus, Warren and Buffalo have easily discharged their initial

burdens.

As for Defendant Crane, in its opening brief, it includes a section entitled "Failure of

Plaintiff's Proof of Crane Co.-Specific Exposure/Causation[.]" (D.I. 445 at 4) After noting that

for Plaintiff to succeed in her action, she must, *inter alia*, "prove that defendant-attributable

asbestos exposure was a substantial factor in causing [Mr. MacQueen's] injury[,]" (*id.* (citations

omitted)), Crane states that "[s]ince there has been no evidence produced to support Plaintiff's

allegations that Decedent was exposed to an asbestos-containing Crane Co. product, Plaintiff

cannot satisfy the applicable maritime law by providing sufficient evidence that exposure to a

Crane Co. product was a substantial factor in causing Decedent's injury[,]" (*id.* at 5). In reaching

this conclusion, Crane also refers explicitly to the testimony of the three product identification

witnesses referenced above. There it explains that "[t]hree witnesses were tendered for

deposition by Plaintiff in support of Plaintiff's claims of asbestos exposure while serving in the

United States Navy: [Mr.] Garrant, [Mr.] Mitchell and [Mr.] Strode[,]" that "[n]one of these

witnesses knew Mr. MacQueen or any of the work he performed" and that "none of them

testified to any work performed on any Crane Co. piece of equipment and none knew of any

asbestos exposure, to Mr. MacQueen or anyone else, as the result of working with any Crane Co.

product." (*Id.* at 3; *see also id.* at 2)

Now it is true, as Plaintiff notes, (D.I. 535 at 9), that when Crane made reference to the

testimony of these three witnesses, it did not cite for support to *particular pages of the witnesses'*

9

*deposition testimony.*  But Crane *did*: (1) explain the basis for its Motion, (2) identify certain witnesses whose testimony allegedly underscored the merit of its Motion (in a case where its co-Defendants had otherwise cited to the relevant pages of that testimony for the same purpose), and (3) describe what it was about those witnesses' testimony that was lacking.  In light of this, the Court concludes that Crane too has discharged its burden.  That is, Crane did enough to "inform[] the district court of the basis for its motion" and to "identify[]" the portions of the record that demonstrate the absence of a genuine issue of fact.  *Celotex*, 477 U.S. at 323; *cf. Church-El v. Bank of New York*, Civil No. 11-877 (NLH/KW), 2015 WL 757690, at *4 (D. Del. Feb. 19, 2015) (finding that summary judgment movant had not met his initial burden because he had neither submitted documents in support of his motion nor "described the content of these documents with any degree of particularity").  This amounts to "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325; *see also Singletary*, 266 F.3d at 192 n.2.

    In light of this, the burden shifts to Plaintiff to show a genuine issue of material fact.[8]

---

[8]    In support of her argument to the contrary, Plaintiff cites three cases. (*See, e.g.*, D.I. 535 at 9-11)  The first, *Breedlove v. CSX Transportation Corp.*, 643 F. Supp. 2d 721 (E.D. Pa. 2009), simply notes that "the moving party bears the initial burden of showing the absence of a genuine issue of material fact[.]" *Breedlove*, 643 F. Supp. at 724.  While the *Breedlove* Court denied summary judgment in an asbestos case, it did not further discuss what type of showing is necessary for a defendant to make, in order to discharge its initial burden of pointing out the absence of a genuine issue of material fact.  Indeed, in articulating what the defendant/movant *had* done to put the summary judgment issue in play, the *Breedlove* Court simply stated that the defendant "argues that it is entitled to summary judgment because [plaintiff] has not pointed to evidence on this record from which a fact finder reasonably could conclude that he was exposed to asbestos while on [defendant's] property." *Id.* at 727-28.  After that, the Court focused its analysis on whether the plaintiff had sufficiently laid out evidence that would allow the case to move forward. *See id.* at 728 ("[Plaintiff] has pointed to evidence sufficient to create a genuine issue of material fact as to whether he was exposed to asbestos that was released by products used by [defendant]. . . .").

The Court will next assess whether Plaintiff has met that burden.

**B.    Whether Plaintiff Has Established the Existence of a Genuine Issue of Material Fact as to Causation**

**1.    Exposure**

The threshold question that the Court must answer in the causation inquiry is whether Plaintiff has raised a genuine issue of material fact as to whether Mr. MacQueen was exposed to any of the Defendants' products.  The Court determines that she has not.

As was noted above, Plaintiff tendered three product identification witnesses during discovery, who were deposed in July and August of 2014.  (D.I. 271; D.I. 273; D.I. 277)  None of the three witnesses offered factual information that would allow the Court to infer that Mr. MacQueen was ever exposed to any of the Defendants' products on either the U.S.S. Randolph or the U.S.S. Independence (or anywhere else).  Indeed, two of the witnesses, Mr. Strode and Mr. Garrant, did not recall ever meeting Mr. MacQueen.  (*See* D.I. 463, ex. A at 12-13; *id.*, ex. B at 19)  The third witness, Mr. Mitchell, testified that he had met Mr. MacQueen, but then he identified the man he was thinking of as a black man (Mr. MacQueen was white).  (D.I. 461 at 8 & ex. H at 17)  Additionally, Mr. Mitchell testified that he would not be able to say whether Mr. MacQueen worked on any particular piece of equipment on the U.S.S. Independence.  (*Id.*, ex. H at 52-53)  And, in fact, Plaintiff does not now rely on any aspect of these three witnesses'

---

The other two cases on which Plaintiff relies are, as Defendant Crane notes, (D.I. 543 at 3 n.3), state court cases that do not apply Rule 56.  *See Weber v. John Crane, Inc.*, 50 Cal. Rptr. 3d 71 (Cal. App. 2006); *Reid v. Georgia Pacific Corp.*, 622 N.Y.S.2d 946 (N.Y. App. Div. 1995). Plaintiff has not explained why such cases should control here.

testimony in order to defeat summary judgment.[9]

---

[9]     Plaintiff does use a significant portion of her briefing to argue that each Defendant's initial disclosures and each Defendant's responses to Plaintiff's first set of interrogatories and requests for production of documents were deficient. (*See, e.g.*, D.I. 535 at 12-14) For at least two reasons, the Court finds that these arguments do not bear on its decision here.

First, as to the instant Motions, it is unclear how the alleged discovery deficiencies would have affected the Court's disposition. In this Report and Recommendation, the Court finds that there is not sufficient evidence that Plaintiff was exposed to any of Defendants' products, and that Plaintiff would, for example, need evidence such as the testimony of a percipient witness in order to demonstrate such exposure. Defendants' disclosures, even had they been more fulsome, would not seem to have been able to remedy the lack of such evidence. When asked about this at oral argument, Plaintiff's counsel suggested that adequate disclosures would have allowed counsel to refresh product identification witnesses' recollections during depositions. (Tr. at 60) But it is hard to see how this is so, since none of these three witnesses appeared to know who Mr. MacQueen was, nor could any of them thus have provided testimony as to whether or to what extent Mr. MacQueen worked on or around any particular piece of equipment.

Second, the relevant discovery period in this case is long closed. If Plaintiff believed that a Defendant's initial disclosures or other discovery responses were deficient under either Federal Rules of Civil Procedure 26 and/or 37, then it could have utilized the Court's discovery dispute procedures, detailed in the original Scheduling Order, to address such issues. (*See* D.I. 126 at ¶ 4(f)) As to Defendants' initial disclosures, for example, they were produced by Buffalo in August 2013, by Crane in September 2013 and by Warren in March 2014. (D.I. 137; D.I. 170; D.I. 206). Plaintiff did not object to any of them via the Court's discovery dispute procedures at any point through the expiration of the discovery period in October 2014. And as for Defendants' responses to Plaintiff's first set of interrogatories and requests for production of documents, there too, Plaintiff never utilized the Court's discovery dispute procedures to challenge the sufficiency of these responses. Plaintiff did cite to alleged deficiencies in those responses in moving to amend the Scheduling Order—a motion Plaintiff filed on the same date that motions for summary judgment were due. (D.I. 439) However, in resolving the motion to amend, the Court addressed Plaintiff's arguments as to discovery deficiencies. In doing so, it explained that Plaintiff had: (1) not provided sufficient specificity as to *why* remaining Defendants' responses were lacking; and (2) provided shifting explanations as to *whether* it felt that the responses were, in fact, deficient. *See MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2015 WL 167674, at *5 (D. Del. Jan. 8, 2015). And so, the Court concluded that it did not then have sufficient evidence of discovery violations to warrant the alteration of the case schedule. *Id.* Moreover, to the extent Plaintiff now complains that Defendants' discovery responses were late submitted (i.e., submitted in September 2014, not long before the case dispositive motion deadline), (D.I. 535 at 12), the Court has previously explained that this was largely a function of the fact that Plaintiff did not actually propound its

Instead, Plaintiff attempts to establish a factual controversy based on the expert affidavit of Captain Francis J. Burger (the "Burger Affidavit" or the "Affidavit"), disclosed for the first time with her briefs in opposition to the pending Motions.  (*See, e.g.*, D.I. 535, Ex. B ("Burger Aff."))  Captain Burger is a retired Naval Engineering Officer and Engineer/Project Manager with over 50 years of experience in the fields of Naval and Marine Engineering and Naval Architecture.  (Burger Aff. at ¶ 1 & att. A)  As he explains in the Affidavit, Captain Burger has experience in:

> evaluating and considering the potential for exposure to asbestos encountered by shipboard naval personnel, including pipefitters, welders, engine room personnel and shipyard workers in connection with work with a variety of equipment and products used aboard U.S. naval ships and aircraft carriers. [He has] also developed extensive knowledge and familiarity with the types of equipment used aboard merchant and naval vessels . . . .

(*Id.* at ¶ 5)  While Captain Burger was in the Navy, he served on the U.S.S Saratoga, a sister ship to the U.S.S Independence.  (*Id.* at ¶ 6)  Captain Burger asserts that the equipment on the two ships was "virtually identical."  (*Id.*)  Additionally, Captain Burger states that he has familiarity with the equipment and manufacturers of the U.S.S. Randolph based on his review of the ship's Hull and Machinery Synopsis.  (*Id.* at ¶ 7)  He has also reviewed the equipment lists and other official documents related to the U.S.S. Independence and the U.S.S. Randolph provided by a government document research and retrieval service.  (*Id.* at ¶ 8 & att. B)  Captain Burger asserts

---

first discovery requests until July 2014.  *See MacQueen*, 2015 WL 167674, at *8-9.

The bottom line is that Plaintiff did not sufficiently demonstrate—either during the discovery period or as a part of its briefing here—why the substance of Defendants' discovery responses should absolve Plaintiff of the need to meet its burden in order to withstand summary judgment.

his expert opinion:

> to a reasonable degree of certainty, that during the years 1958
> through 1960 the gaskets, packing, and insulation used as
> replacement parts for valves, pumps and pipe insulation would
> have been like the kind, quality and specification as the original
> part *including the use of asbestos-containing materials* in such
> gaskets, packing and insulation.

(*Id.* at ¶ 11 (emphasis added))

As to Mr. MacQueen's alleged exposure to asbestos-containing products, Captain Burger

makes certain statements based on his review of Mr. MacQueen's military service records, and

on his knowledge regarding the day-to-day duties of servicemen like Mr. MacQueen. (*Id.* at ¶ 13

& att. C; *see also id.* at ¶ 24) According to Captain Burger, in Mr. MacQueen's role as a

pipefitter in the Repair Division on the U.S.S. Randolph and U.S.S. Independence, Mr.

MacQueen "would have come into immediate and close proximity to asbestos-containing

packing in valves and asbestos-containing gaskets on pumps, as well as asbestos-containing pipe

insulation." (*Id.* at ¶ 24) Captain Burger opined that in light of the typical duties of sailors like

him, Mr. MacQueen "would have [had] regular and weekly access and work in virtually all

spaces" of the two ships. (*Id.* at ¶ 26) And he states that it is his "opinion, to a reasonable degree

of scientific certainty, that Mr. MacQueen would have worked with or been in close proximity

to" various pieces of equipment (including various types of valves and pumps), and "as such

would have been in close proximity to asbestos-containing products contained in and around

such pieces of equipment." (*Id.* at ¶ 27)

Captain Burger concludes that, based on his review of certain Naval records, certain

products manufactured by Defendants Crane ("[v]alves, gaskets, packing"), Buffalo ("Evaporator

14

Brine Overboard Discharge Pump FR #3"), and Warren ("Bilge Pumps[,]" "Evaporator Brine

Overboard Discharge Pumps[,]" "Evaporator Tube Nest Drain Pumps[,]" "Emergency Feed

Pumps[,]" and "Hot Fresh Water Pumps") were on board the U.S.S. Randolph and U.S.S.

Saratoga between 1956 and 1960.  (*Id.* at ¶ 29)  He further states that it is his "opinion" that Mr.

MacQueen "would have worked with and been in close proximity to[,]" *inter alia,* "valves

manufactured by Crane; evaporator overboard discharge pump FR#3 manufactured by Buffalo

Pumps; . . . [and the five above-referenced products] manufactured by Warren[.]"  (*Id.* at ¶ 30)

Consequently, Captain Burger concludes, "to a reasonable degree of scientific certainty,

that Mr. David MacQueen was exposed to the asbestos-containing products contained in, but not

limited to" products manufactured by Crane, Warren, and Buffalo, respectively.  (*Id.* at ¶ 65)

Thus, Plaintiff argues, the Burger Affidavit creates a genuine issue of material fact as to Mr.

MacQueen's exposure to asbestos-containing products manufactured by the respective

Defendants.  (*See* D.I. 535 at 15-19)

All three Defendants raise arguments in opposition.  For example, while Defendants

acknowledge that "[t]he Burger [A]ffidavit is based, in part, on numerous records relating to the

ship on which Mr. [MacQueen] served, his Navy personnel records, and affidavits, depositions,

and other materials from unrelated cases[,]" (D.I. 544 at 2), they point out that those records

contain insufficient information as to whether *Mr. MacQueen himself* was ever exposed to

asbestos from any of the Defendants' products.  Defendants argue that to the extent that Captain

Burger intends to offer expert testimony on this exposure issue, Federal Rule of Evidence 702

requires that the testimony must be "based on sufficient facts or data[.]"  Fed. R. Civ. P. 702(b).

Yet in rendering his opinion on Mr. MacQueen's exposure to Warren, Crane, or Buffalo products

on the two ships in question, Captain Burger takes what amounts to one known fact—that Mr.

MacQueen served as a pipefitter/welder on the two ships, (Burger Aff. at ¶¶ 13-15, 24, 26)—and

then opines that Mr. MacQueen "would have worked with or been in close proximity to" the

remaining Defendants' products, (*id.* at ¶¶ 27-30).  Defendants assert that there is an insufficient

factual foundation to support Captain Burger's opinion in this regard, (*see, e.g.*, D.I. 545 at 4),

and that Captain Burger's testimony on the point thus amounts to mere conjecture or speculation,

(*see id.*; D.I. 543 at 5; D.I. 544 at 5; Transcript of January 10, 2017 Oral Argument (hereinafter,

"Tr.") at 14, 25, 69-70, 74).[10]

Relevant case law supports the Defendants' argument—that an expert affidavit of this

nature, standing alone, is simply not enough to create a genuine fact issue for trial.  In *Olivar v.*

*Buffalo Pumps, Inc.*, MDL 875, CIVIL ACTION NO. 09-62577 (E.D. Pa. Mar. 29, 2011), (D.I.

544, ex. B ("*Olivar*")), for example, the United States District Court for the Eastern District of

Pennsylvania addressed whether summary judgment should be granted to defendant Buffalo, as

---

[10]     Captain Burger was never deposed, and so, unlike most expert testimony offered
by a party in support of or against summary judgment, the substance of his testimony was never
vetted in discovery.  *Cradle IP, LLC v. Texas Instruments, Inc.*, 5 F. Supp. 3d 626, 639 & n.1 (D.
Del. 2013) ("[T]here should be no surprises in the summary judgment record").  In its briefing,
Buffalo thus objects that Captain Burger is relying here on "materials never disclosed or
produced" by Plaintiff during the discovery period.  (*See, e.g.*, D.I. 544 at 2)  The Court inquired
about this during oral argument, and it appears that the parties (or at least Defendants) did not
contemplate that much if any expert testimony would be offered at the product
identification/nexus stage, so there was no expert discovery period in the initial Scheduling Order
relating to this stage.  (Tr. at 32-33; D.I. 126)  But Buffalo's counsel argued, (Tr. at 32-33), and
Plaintiff's counsel seemed to acknowledge, (*id.* at 54), that Plaintiff should nevertheless at least
have disclosed Captain Burger as a witness in her Initial Witness and Exhibit Lists, filed in
December 2013, (D.I. 192; D.I. 193; *see also* D.I. 126 at ¶ 4).  Apparently, Plaintiff did not do so.
In any event, for the reasons set forth below, the Court need not address Buffalo's objection as to
the "surprise" testimony of Captain Burger.  This is because the Court's recommendation is to
grant its Motion on the causation issue even after taking into account Captain Burger's affidavit.

to whether the decedent was exposed to asbestos from pumps manufactured and supplied by

Buffalo. (*Olivar* at 1)  The decedent had never been deposed, and none of the decedent's co-

workers testified regarding his exposure to asbestos products while in the Navy.  Instead, the

plaintiff (the decedent's personal representative) relied largely on the expert reports/affidavits of

a retired Navy Captain, R. Bruce Woodruff, in order to demonstrate a genuine dispute of material

fact on this point.  (*Id.* at 4)  As did Captain Burger here, in *Olivar*, Captain Woodruff reviewed

the decedent's records, and opined that based on the decedent's rank and service record, the

decedent would have been placed in close proximity to Buffalo pumps on a number of ships (and

thus would have been exposed to asbestos from that work).  (*Id.* at 4-8)  After reviewing the

content of Captain Woodruff's affidavits, the *Olivar* Court concluded as follows:

> The main flaw in Plaintiff's evidence is that she has failed to
> produce any fact witnesses to testify that [decedent] performed work
> on any Buffalo pump, or that anyone performed work on these
> pumps in [decedent's] presence.  Instead, Plaintiff relies heavily on
> the reports and affidavits of her expert, Captain Woodruff, who tries
> to piece together from shipping records where [decedent] would
> have served aboard each of the seven Navy vessels which Captain
> Woodruff claimed in his second supplemental affidavit contained
> Buffalo pumps. However, Plaintiff is using an *expert* witness to
> establish the *factual* (product identification and exposure) basis of
> her case.

(*Id.* at 8-9 (emphasis in original))  For this and other related reasons, the *Olivar* Court

recommended the grant of Buffalo's summary judgment motion.  (*Id.* at 15); *cf. Conroy v. A.W.*

*Chesterton Co.*, MDL No. 875, Civil Action No. 2:11-67277-ER, 2012 WL 5458119, at *1 n.1

(E.D. Pa. Oct. 26, 2012) (holding that "there is no evidence from anyone with personal

knowledge that [the decedent] was exposed to gaskets or packing that was original to

[defendant's] valves–or replacement gaskets or packing that were manufactured or supplied by

[defendant]" and explaining that the "opinion of Plaintiff's expert, Mr. Moore [as to those issues], while based on experience, is yet impermissibly speculative[,]" such that summary judgement should be granted as to lack of causation); *Cardaro v. Aerojet Gen. Corp.*, MDL No. 875, Civil Action No. 2:11-66763-ER, 2012 WL 3536243, at *1 n.1 (E.D. Pa. July 27, 2012) (granting summary judgment on the grounds that, *inter alia*, "there is no evidence from anyone with personal knowledge as to whether Plaintiff ever worked with or around [defendant's] valve" and that an expert's opinion that it was "more likely than not" that the valves that the plaintiff worked with and around were defendant's valves was "impermissibly speculative").

Even the case upon which Plaintiff relies most heavily, *Nelson v. Air & Liquid Systems Corp.*, No. C14-0162JLR, 2014 WL 6982476 (W.D. Wash. Dec. 9, 2014), actually supports Defendants' arguments. There, the *Nelson* Court denied-in-part defendant Crane's summary judgment motion on exposure/causation grounds. *Nelson*, 2014 WL 6982476, at *14. And, as Plaintiff notes, in doing so, the *Nelson* Court took into account the testimony of the plaintiff's Naval expert, Captain Lowell, who "opine[d] . . . that Mr. Nelson ["plaintiff Nelson"] more probably than not came into contact with original asbestos materials from Crane valves aboard [the ship in question]." *Id.* But crucially, the evidence as to exposure included plaintiff Nelson's *own testimony* that he had worked directly on Crane valves when on the ship. *Id.* at *13-14. Indeed, Captain Lowell had cited to plaintiff Nelson's testimony in formulating his own opinion on the exposure issue. *Id.* at *14.

And importantly, in another portion of the *Nelson* Court's opinion, Captain Lowell's expert testimony *alone* was not enough to generate a genuine issue of material fact regarding exposure/causation. There, the *Nelson* Court granted another defendant's ("Carrier") summary

18

judgment motion, noting that plaintiff Nelson never testified to having worked with or around

Carrier turbines on the ship in question. *Id.* at *15. Instead, plaintiff Nelson had only testified to

working around main feed pumps manufactured by another company ("Ingersol-Rand"). *Id.* at

*15. The *Nelson* plaintiffs tried to rely on expert testimony from Captain Lowell to fill in this

gap. They cited to Captain Lowell's testimony, which explained that when plaintiff Nelson had

testified that he worked on the main feed pumps, he must have meant that he had worked on an

integrated piece of equipment (one that included not only the Ingersol-Rand-manufactured feed

pump, but *also* a Carrier turbine). *Id.* But the *Nelson* Court explained that it was "Mr. Nelson's

perspective" on the exposure issue that counted, and there was no testimony from him that he had

been exposed to an integrated feed pump/turbine piece of equipment. *Id.* Therefore, plaintiffs

had failed to raise a "reasonable inference that Mr. Nelson worked on the Carrier turbines or

around them while others worked on them[,]" and thus Carrier's summary judgment motion was

granted. *Id.* at *16 (noting that any jury verdict in favor of plaintiffs on this point, based on the

exposure evidence they had put forward, would be an "impermissibly conjectural" finding).[11]

---

[11]     Plaintiff also identifies two opinions—*McCrossin v. IMO Industries., Inc.*, No.
3:14-cv-05382-RJB, 2015 WL 881108 (W.D. Wash. Mar. 2, 2015) and *McCrossin v. IMO
Industries., Inc.*, No. 3:14-cv-05382, 2015 WL 575155 (W.D. Wash. Feb. 11, 2015)—as cases in
which a court relied on Captain Burger's testimony as circumstantial evidence in denying a
defendant's motion for summary judgment on causation grounds. (*See* D.I. 566 & ex. A)  But
the *McCrossin* cases differ from the instant case in the same way that *Nelson* does; there, the
plaintiff was personally deposed and described what locations he worked in and what materials
he worked with on the ship in question. *McCrossin*, 2015 WL 881108, at *4 ("Finally, this Court
has already concluded that plaintiff has produced sufficient evidence that asbestos was originally
installed in the precise location and equipment [that] *Mr. McCrossin described working in and
with*.") (emphasis added); *McCrossin*, 2015 WL 575155, at *1, *4 ("Specifically, plaintiff has
raised genuine issues of material fact by citing to deposition testimony that Insulag was not only
used on the Trenton, but also installed both in the engine rooms and on the boilers and turbine,
the location and equipment Mr. McCrossin *described working in and with*.") (emphasis added).
Plaintiff has not pointed the Court to a decision where expert testimony like that of Captain

As in *Olivar* and as to the claim against Carrier in *Nelson*, here Plaintiff has not produced any percipient fact witnesses testimony that would demonstrate that Mr. MacQueen ever worked on or was otherwise exposed to any of the Defendants' products.  She relies solely on Captain Burger's opinion that, based on what Mr. MacQueen's job titles and duties were, he "*would have* worked with and been in close proximity to" Warren or Crane or Buffalo products on the two relevant vessels.  (Burger Aff. at ¶¶ 27, 30 (emphasis added))  But as the key, hypothetical-sounding words ("would have") in Captain Burger's opinion testimony suggest, there is not sufficiently solid evidence here as to what products Mr. MacQueen *actually was* exposed to.  Captain Burger's testimony that Mr. MacQueen "would have" been exposed to a certain product is not all that different from testimony that Mr. MacQueen "could have" been or "might have" been so exposed.  All such testimony is unduly speculative and cannot, on its own, raise a genuine issue of material fact.

At oral argument, Plaintiff's counsel pushed back against the idea that Captain Burger is merely an expert witness who lacked a sufficient factual foundation on this issue.  Instead, Plaintiff argues, Captain Burger is both an expert witness *and* a fact witness.  (Tr. at 44, 62)

To the extent that Captain Burger's affidavit is said to include fact witness testimony, Federal Rule of Evidence 56(c)(4) would require that, as to the exposure issue, the affidavit be "made on personal knowledge[.]" Fed. R. Civ. P. 56(c)(4).  Plaintiff asserts that Captain Burger's opinions fit that bill, based, *inter alia*, on his decades of professional experience, including his service on the U.S.S. Saratoga (a ship with assertedly identical equipment to one of

---

Burger, with nothing more, was deemed sufficient to establish a genuine issue of material fact as to exposure.

the two ships at issue here, the U.S.S. Independence).  At oral argument, Plaintiff cited for the

first time to *Boyd v. Warren Pumps, LLC*, 654 F. App'x 875 (9th Cir. 2016), as an example of a

case in which a court allowed Captain Burger to lay his own factual foundation for related expert

opinion. (Tr. at 45-48)  And the *Boyd* Court did cite to the content of Captain Burger's

declarations there as laying "an adequate foundation for his assertion that original equipment

manufacturers like Buffalo and Warren Pumps more likely than not supplied asbestos-containing

spare parts with a new pump at the time it was sold to the Navy[,]" based on "the extensive

personal and professional experience, knowledge, research and training on which Captain

Burger's statements [we]re based." *Boyd*, 654 F. App'x at 877 n.2.  But at no point did the *Boyd*

Court indicate that Captain Burger's affidavit would have been sufficient to demonstrate the

plaintiff's *presence near or exposure to* particular pumps on the ship in question.[12]

Even if Captain Burger can be said to be a fact witness as to the *presence* of Defendants'

products on the U.S.S. Independence (and, perhaps, even the U.S.S. Randolph), he could not be

considered a fact witness as to Mr. MacQueen's actual exposure to those products.  Captain

Burger simply has no personal knowledge on that subject.  *Cf. Olivar* at 8-9; *Conroy*, 2012 WL

5458119, at *1 n.1; *Cardaro*, 2012 WL 3536243, at *1 n.1.

Lastly, the Burger Affidavit cannot create a fact issue as to at least one additional element

of the "exposure" prong regarding causation:  whether Mr. MacQueen was exposed to an

asbestos-containing product manufactured or supplied *by the Defendants*.  *See, e.g., Conner*, 842

F. Supp. 2d at 801.  The Burger Affidavit asserts that Mr. MacQueen was exposed to "asbestos-

---

[12]      Indeed, the *Boyd* Court noted that the plaintiff himself had provided deposition
testimony about his work on the ship and as to what pumps had been on the ship with him. *Boyd*
654 F. App'x at 877.

containing products *contained in*" products manufactured by Defendants.  (Burger Aff. at ¶ 65

(emphasis added))  But it does not state that the Defendants themselves manufactured or supplied

these asbestos-containing products, and the Court cannot infer as much absent sufficient factual

support.[13]

Captain Burger does assert that Defendants' products were aboard the U.S.S. Randolph

and U.S.S. Independence, (Burger Aff. at ¶ 29), and that the Navy had a policy of using

replacement parts "which were *either* from the original manufacturers *or* of like kind, quality and

specification, as those provided by the original manufacturers," (*id.* at ¶ 10 (emphasis added)).

Additionally, he opines that "during the years 1958 through 1960 the gaskets, packing, and

insulation used as replacement parts for valves, pumps and pipe insulation would have been like

kind, quality and specification as the original part including the use of asbestos-containing

material in such gaskets, packing and insulation." (*Id.* at ¶ 11)  This does not suffice to create an

inference that any of the Defendants are legally responsible for any asbestos-containing products

or parts that Mr. MacQueen worked with.  That is, the Court cannot infer, solely from these

broad (and vague) statements that Mr. MacQueen was exposed to asbestos-containing products

that were either (1) originally manufactured *by Defendants*, or (2) supplied *by Defendants* as

replacement parts.  *Cf. Conroy*, 2012 WL 5458119, at *1 n.1.

---

[13]    *See Cardaro*, 2012 WL 3536243, at *1 n.1 (granting summary judgment on the
grounds that plaintiff had not established a genuine issue of material fact as to whether "the
gaskets, packing and/or insulation to which Plaintiff was exposed in connection with
[defendant's] valves were manufactured or supplied by [the defendant,]" where an expert witness
had testified only that the plaintiff would have routinely removed and replaced asbestos-
containing *gaskets* that were on *valves that were manufactured by the defendant* ); *see also Floyd
v. Air & Liquid Sys. Corp.*, MDL No. 875, Civil Action No. 2:10-CV-69379-ER, 2012 WL
975615, at *1 n.1 (E.D. Pa. Feb. 8, 2012).

22

## 2.    Substantial Factor

Even assuming *arguendo* that the Court could credit the Burger Affidavit as sufficient evidence establishing that Mr. MacQueen was exposed to asbestos-containing products manufactured or supplied by any of the Defendants, this would still not create a genuine issue of material fact as to causation.  In order to survive summary judgment, Plaintiff would also have to identify sufficient "circumstantial evidence to allow a jury to infer that [Mr. MacQueen] was [not only] exposed to [Defendants'] products, [but] *that the exposure was substantial enough to contribute to his injury*." *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 771 (N.D. Ill. 2014) (emphasis added).  On this point too, the evidence presented is insufficient to withstand summary judgment.

Instructive is this Court's decision in *Walkup v. Air & Liquid Systems Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353 (D. Del. June 4, 2014).  In that case, the plaintiff alleged that he was exposed to asbestos from pumps aboard a Navy ship, and Naval records indicated that Defendant Buffalo supplied some of the pumps installed on that ship. *Walkup*, 2014 WL 2514353, at *1, *3, *7.  But Magistrate Judge Fallon found that while the plaintiff's evidence indicated that these pumps were located in a particular engine room on the ship, there was no evidence that the plaintiff had worked on pumps in that engine room.  *Id.* at *7.  Thus, plaintiff's records did "nothing more than show the mere presence of Buffalo Pumps' products aboard [the ship,]" and this was insufficient to survive Buffalo's summary judgment motion.  *Id.* at *7; *see also Lindstrom*, 424 F.3d at 492 (holding that "a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient [to establish causation,]" and rather that a plaintiff must show "a high enough level of exposure that

23

an inference that the asbestos was a substantial factor in the injury is more than conjectural")
(internal quotation marks and citation omitted).  In adopting Magistrate Judge Fallon's Report
and Recommendation, the District Court further articulated that "[a]bsent direct evidence of
exposure to a defendant's products (such as testimony of an eye-witness), '*substantial* exposure
is necessary to draw an inference from circumstantial evidence that the exposure was a
*substantial* factor in causing the injury.'"  *Walkup*, 2014 WL 4447568, at *1 (emphasis in
original) (certain quotation marks and citations omitted); *see also In re Asbestos Prods. Liability
Litig. (No. VI)*, MDL Docket No. 875, No. 10-67422, 2011 WL 5506027, at *1 n.1 (E.D. Pa. July
5, 2011) (granting a defendant's motion for summary judgment on the ground that the plaintiff
could not establish that any exposure to defendant's product was a substantial contributing factor
to plaintiff's injuries, and finding that Captain Burger's testimony asserting that the decedent
"would have been" exposed to such products on the ship in question, in light of the decedent's
job title, was insufficient to create a genuine issue of material fact).

Here, the Burger Affidavit simply does not speak to the level of asbestos exposure that
Mr. MacQueen may have experienced.  The closest the affidavit comes to touching on the issue
is through the assertion that Mr. MacQueen, in his role as a pipefitter and welder, would "work in
virtually all spaces in the ship from bilge to fore truck and steering gear rooms to anchor
windlass room – at any time in a day's work." (Burger Aff. at ¶ 26)  But the fact that Mr.
MacQueen could have been anywhere on such large aircraft carriers at any given time, if
anything, further undercuts the possibility that he experienced "substantial exposure" to any

particular product found in any particular place.[14]  In light of this, the Court finds that Plaintiff

has not demonstrated a genuine issue of material fact as to substantial exposure.[15]

### 3.   Conclusion

Based on the evidence provided, the Court cannot infer that Mr. MacQueen worked on or

was exposed to Defendants' products.  Nor can it infer that any asbestos-containing products that

Mr. MacQueen may have been exposed to were manufactured by Defendants.  And even if the

Court could make these inferences, it could still not make the inference of substantial exposure

necessary to allow the relevant claims to move forward towards trial.  As such, Defendants must

prevail on their Motions.

### C.   Whether Summary Judgment Should be Granted as to All Remaining Defendants as to All Counts

At oral argument, the Court raised the issue of whether a finding that there is no genuine

---

[14]     For example, at oral argument, Buffalo's counsel noted that U.S.S. Randolph and U.S.S. Independence were roughly 1,000 feet long and that "Captain Burger points out only one Buffalo pump in one of the many fire rooms on board these two aircraft carriers." (Tr. at 34-35; *see also* D.I. 535, ex. C at 2-3; Burger Aff. at ¶ 29)  As counsel explained, Captain Burger cannot offer evidence as to whether "Mr. MacQueen worked with or around this specific pump in this specific room at any time, let alone with [the] frequency to establish substantial factor causation and substantial exposure which is required when relying solely on circumstantial evidence." (Tr. at 36)

[15]     At oral argument, Plaintiff's counsel offered a new argument as to why the circumstantial evidence in this case allows for an inference of substantial exposure. Specifically, counsel argued that substantial exposure could be inferred because Mr. MacQueen served on the U.S.S. Randolph and U.S.S. Independence for "years on end," (Tr. at 66), and that other cases in this context did not address "long-term, low-level exposure[,]" (*id.* at 87-88). But, contrary to counsel's assertions, this does not distinguish the instant case from the other cases cited herein in which summary judgment was granted. *See, e.g. Walkup*, 2014 WL 4447568, at *1 (plaintiff worked aboard the ship for three years); *Conroy*, 2012 WL 5458119, at *1 n.1 (decedent served as a boiler tender on the ship for four years); *Nelson*, 2014 WL 6982476, at *1 (plaintiff served aboard the ship for over three years).

issue of material fact as to causation necessitated a grant of summary judgment as to *all* five

currently operative counts (that is, Counts IV through VIII) of Plaintiff's Fourth Amended

Complaint. (Tr. at 89)  The parties submitted supplemental letter briefing as to this issue on

January 18, 2017.  (D.I. 606-07; D.I. 609-10)

All three Defendants moved for summary judgment on all claims (including cross-claims)

against them. (D.I. 444; D.I. 460; D.I. 462)  In its letter brief on this subject, Plaintiff concedes

that a finding against it on the issue of causation would warrant the grant of dismissal of all of its

currently-pending counts/claims, save one.  As to that remaining claim—Count VII's allegation

that the remaining Defendants (and, actually, all then-named Defendants) conspired with

Metropolitan Life Insurance Company ("Metropolitan"), in order to suppress and misrepresent

the hazards of exposure to asbestos, (D.I. 380 at ¶¶ 48-56)—Plaintiff argues that the count should

remain standing as to two of the three remaining Defendants.  (D.I. 607)

With regard to Defendant Warren, Plaintiff concedes that Warren "did mention th[is]

count[] in [its] motion for summary judgment[,]" that "Plaintiff failed to respond[,]" and thus

that "summary judgment should be granted to Warren on these [that is, on all remaining] counts."

(D.I. 607 at 1 (citing D.I. 461 at 14))  And Warren not only (1) sought dismissal of "all claims

against it" in its Motion, (D.I. 460), but it also (2) included a section in its opening brief titled

"Summary Judgment is Appropriate as to All of Plaintiffs' Ancillary Claims[,]" in which it

argued that the conspiracy claim should be dismissed because Plaintiff could cite to "no

evidence" in support of that claim.  (D.I. 461 at 14; *see also* D.I. 545 at 6 n.5 (Warren reiterating,

in its reply brief, that, *inter alia*, the conspiracy count should be dismissed as to it))  In light of

the fact that Warren at least specifically called out Count VII as being subject to dismissal, and in

26

light of Plaintiff's concession that the claim should be dismissed as to Warren, the Court thus
recommends that it and all of Plaintiff's remaining claims as to Warren be dismissed.

With regard to Crane and Buffalo, however, Plaintiff argues that the conspiracy claim
should survive.  (D.I. 607 at 1)  Although Crane and Buffalo did seek dismissal of "all claims"
against them in their respective Motions and accompanying briefing, (*see* D.I. 444; D.I. 462), in
their opening briefs, neither Defendant specifically mentioned the conspiracy claim at all.  Nor
did they do so in their reply briefs.  Instead, both Crane and Warren seemed to assert in their
opening and reply briefs that if the Court found that no genuine issue of material fact existed as
to causation, then this necessarily meant that all claims (including the conspiracy claims) against
them should be dismissed.[16]

However, Plaintiff argues that this is not so, and that under Delaware law, "even where a
manufacturer's negligence or product did not cause the plaintiff's illness, it can still be liable if it
was a member of a conspiracy to intentionally misrepresent/fraudulently conceal the hazards of
asbestos."  (D.I. 607 at 1 (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 147 (Del. 1987))  In their
supplemental letter briefs on this issue, Crane and Buffalo do not appear to dispute Plaintiff's
statement of the prevailing law of conspiracy in Delaware.[17]  Instead, they argue that: (1) since

---

[16]     (*See, e.g.*, D.I. 445 at 5 (Crane arguing in its opening brief that because "Plaintiff
cannot satisfy the applicable maritime law by providing sufficient evidence that exposure to a
Crane [] product was a substantial factor in causing [Mr. MacQueen's] injury[,]" then "[a]s such,
Plaintiff's claims fail and all claims should be dismissed as to Crane [] as a matter of law"); D.I.
463 at 9 (Buffalo arguing in its opening brief that because "Plaintiff cannot make out a *prima
facie* asbestos action under the maritime product nexus standard[, her] failure to prove the
essential causation element requires dismissal of each and every claim asserted against Buffalo.
Therefore, Buffalo is entitled to summary judgment on all claims."))

[17]     Warren was the only Defendant to suggest, in its post-oral argument letter brief,
that because there does not appear to be any case law recognizing a tort of conspiracy under

they sought summary judgment on "all claims[,]" and since Plaintiff did not argue in her

opposition brief that the conspiracy claim ought to survive, then summary judgment as to that

claim should be entered too; (2) Plaintiff did not properly plead a conspiracy claim because she

failed to assert sufficient facts in support of such a claim; and (3) Count VII is not actually

asserted against Crane or Buffalo—it was only asserted against Metropolitan. (D.I. 606 at 1-2;

D.I. 609 at 1-2)

      With regard to the first argument, the Court cannot agree that Crane and Buffalo did

enough to meet their burden of having "point[ed] out to the district court . . . that there is an

absence of evidence to support the nonmoving party's case" as required for a finding of summary

judgment under *Celotex*.  477 U.S. at 325; *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*,

364 F.3d 135, 145 (3d Cir. 2004) (finding that summary judgment movant had not satisfied its

initial burden because it had "never asserted that [plaintiff] could not meet his burden of proving

that he could have structured his leave differently[, an essential element of his claim]").  This is

not only because Crane and Buffalo did not mention the conspiracy count by name in their

briefing.  It is also because the only legal argument they offered as to why "all claims" (including

the conspiracy claim) against them should be dismissed (the absence of a genuine issue of

material fact as to causation) does not appear to clearly warrant the dismissal of the conspiracy

---

maritime law, Count VII should be dismissed on that ground.  (D.I. 610 at 1 & n.2)  But even
Warren's letter brief suggests that it is an open question in the federal courts as to whether (as
Plaintiff suggests here), in such a circumstance, a court should simply apply state conspiracy law
to such a claim.  (*Id.*)  In any event, with this issue not having been raised in the parties' main
summary judgment briefing, and with almost no argument regarding the issue before the Court,
the Court cannot recommend it as a basis to dismiss Count VII as to Crane and Buffalo.

claim.[18]

As to the second argument, even if Plaintiff's claim was insufficiently pleaded and could not have withstood a motion to dismiss, we are now at the summary judgment stage.[19]  And so, in order to obtain summary judgment, Crane and Buffalo would have to meet its initial burden under Rule 56, in order to fairly shift the burden to Plaintiff to explain why the conspiracy count should remain standing.  That is, they would have had to, as part of their opening brief regarding the Motions, provided some explanation as to why Count VII should be dismissed.  Crane and Buffalo did not do their part here on that score.

With regard to the third argument, although Count VII's title is "Conspiracy Against Metropolitan Life Insurance Company[,]" (D.I. 380 at 31), the body of the count repeatedly asserts liability as to not only Metropolitan, but also as to "Defendants"—a group that would have included Crane and Buffalo.  Plaintiff does not agree that only Metropolitan was asserted to

---

[18]    It might be that if Plaintiff cannot demonstrate causation, then there is no way that it could prove actual damages arising out of the alleged conspiracy, which is an essential element of a conspiracy claim in Delaware. *See Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, C.A. No. 7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014).  But in the Fourth Amended Complaint, Plaintiff suggests that Mr. MacQueen suffered various types of harm due to the alleged conspiracy, (D.I. 380 at ¶¶ 48-56), and it is not clear enough to the Court that all such types of alleged damages are predicated on exposure to one of Defendants' asbestos-containing products, (*see, e.g., id.* at ¶ 54).

[19]    It is hard to believe that what was pleaded in Count VII could have surmounted the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  (*See* D.I. 606 at 2)  And it appears that at least some courts have *sua sponte* granted dismissal of claims at the summary judgment stage for failure to satisfy Rule 9(b). *See, e.g., Dugdale, Inc. v. Alcatel-Lucent USA, Inc.*, No. 1:09-cv-0960-JMS-TAB, 2011 WL 1839155, at *4 & n.2 (S.D. Ind. May 12, 2011), *reconsideration denied by* 2011 WL 2728057 (S.D. Ind. July 12, 2011).  But with no Defendant having addressed why it would be appropriate for the Court to do so under these circumstances, and with Plaintiff not having had the opportunity to address the issue, the Court declines to do so here.

be liable, (D.I. 607), and so this cannot not be a basis on which the Court could recommend dismissal of the count.

For these reasons, the Court does not have a sufficient basis before it to recommend dismissal of Count VII as to Crane and Buffalo.[20]

## IV.   CONCLUSION

For the reasons set out above, the Court recommends that Warren's Motion be GRANTED and that all counts/claims against Warren be dismissed. It recommends that Crane and Buffalo's Motions be GRANTED-IN-PART and DENIED-IN-PART, and that all counts/claims against them be dismissed, except as to Count VII of Plaintiff's Fourth Amended Complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

---

[20]   At different points in this case, the Defendants each filed Answers including cross-claims for indemnification and contribution against all co-Defendants, (*see, e.g.*, D.I. 62, D.I. 148, D.I. 401; *see also* D.I. 126 at ¶ 3). Because the Court recommends dismissal of all of Plaintiff's claims against Warren, and because there is no objection otherwise, the Court also recommends dismissal of any pending cross-claims against Warren, and of Warren's cross-claims against Crane and Buffalo. However, Crane's and Buffalo's cross-claims for contribution and indemnification, (D.I. 62 at 20; D.I. 148 at 7-8), would remain pending against each other as to the remaining count.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.


Dated: February 8, 2017

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE