# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MARGUERITE MACQUEEN, )
Individually and as the Surviving Spouse )
of David MacQueen, Deceased, )
                                         )
           Plaintiff,         )
                                         )
      v.                              )    Civil Action No. 13-831-LPS-CJB
                                         )    Consolidated
UNION CARBIDE CORPORATION, )
et al.,                             )
                                         )
           Defendants.     )

## MEMORANDUM ORDER

Presently pending before the Court in this asbestos-related personal injury action is a motion filed by Plaintiff Marguerite MacQueen ("Plaintiff") seeking to strike remaining Defendant Crane Company's ("Defendant" or "Crane") motion for summary judgment ("Motion"). (D.I. 632) Crane opposes the Motion. For the reasons discussed below, the Motion is DENIED.

## I. BACKGROUND

On March 28, 2013, Plaintiff filed this lawsuit in the Superior Court of Delaware, in and for New Castle County. (D.I. 1, ex. 1 ("Complaint")) In the Complaint, Plaintiff asserted state law causes of action based on her husband David MacQueen's ("Mr. MacQueen") alleged exposure to asbestos and asbestos-containing products while Mr. MacQueen was employed: (1) by the United States Navy aboard the U.S.S. Randolph and the U.S.S. Independence from 1956 to 1960; and (2) as a salesman by Union Carbide Corporation from approximately 1963 to 1980. (*Id.* at ¶ 11)

On May 10, 2013, Defendants Crane Company and Elliott Company ("Removing

Defendants") filed respective notices of removal in this Court. (D.I. 1) This consolidated case[1] was later referred to the Court by District Judge Sue L. Robinson on September 11, 2013, for the Court to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 152) Subsequent to Judge Robinson's later retirement, the case was first re-assigned to visiting District Judge Eduardo C. Robreno, and has since been re-assigned to Chief Judge Leonard P. Stark. The substance of the Court's referral, however, has remained the same through these re-assignments. (*See, e.g.*, D.I. 627)

The controlling revised Scheduling Order ("Scheduling Order") in the case was signed by the Court on October 16, 2015. (D.I. 584) It issued in light of the District Court's order that discovery on the issue of product identification and nexus should be re-opened, in order to allow Plaintiff the ability to pursue certain third-party discovery on that subject from former Defendant Huntington Ingalls Incorporated ("HII"). (D.I. 580) Paragraph 1(a) of the Scheduling Order thus set new a deadline for completion of "product identification discovery" (April 1, 2016), and Paragraph 11 of the Scheduling Order further provided that "[a]ll renewed and supplemented case dispositive motions on product identification and nexus, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before July 1, 2016." (D.I. 584 at ¶¶ 1(a)(vi) & 11)[2]

---

[1] Because Removing Defendants filed two separate notices of removal, this Court opened two separate actions, which were originally captioned Civil Action Nos. 13-831-SLR-CJB and 13-835-SLR-CJB; both are entitled *MacQueen v. Union Carbide Corp., et al.* The actions have since been consolidated, and Civil Action No. 13-831 has been designated as the lead case. Citations to docket numbers are to documents that have been filed in the lead case.

[2] The three then-remaining Defendants—Crane, Warren Pumps LLC ("Warren") and Air & Liquid Systems Corporation ("Buffalo")—had previously filed summary judgment motions on product identification and nexus grounds on October 17, 2014. (D.I. 444; D.I. 460;

2

The Scheduling Order also addressed the schedule for the filing of "Other Dispositive Motions[.]" (*Id.* at ¶ 1(b)(iii) (emphasis omitted)) As to such motions, Paragraph 1(b) of the Scheduling Order provided that: (1) by 60 days after "all summary judgment motions are resolved[,]" expert reports were to be submitted by the "party who has the initial burden of proof on the subject matter"; (2) expert depositions and all expert discovery was to be completed by 171 days "after all summary judgment motions are resolved"; and then (3) "[a]ll other Dispositive Motions shall be filed no later than . . . 201[] days after all summary judgment motions are resolved, unless otherwise ordered by the Court." (*Id.* at ¶ 1(b)) The Scheduling Order did not set a date for the pre-trial conference and trial, leaving those dates to be later determined. (*Id.* at ¶¶ 13, 16)

The Court later extended the deadline for resolution of all product identification/nexus discovery to May 6, 2016, as well as the deadline for the filing of product identification/nexus summary judgment motions (hereafter, "product identification/nexus summary judgment motions") to August 5, 2016. (D.I. 596 at 8-9) On August 1, 2016, Plaintiff and the remaining Defendants (Crane, Warren and Buffalo) filed a stipulation, in which: (1) they each stated their request that briefing on the Defendants' originally-filed product identification/nexus summary judgment motions should be deemed submitted for purposes of the new product identification/nexus summary judgment motions deadline, and (2) Plaintiff sought oral argument on those motions. (D.I. 601) The Court held oral argument on the product identification/nexus summary judgment motions on January 10, 2017.

---

D.I. 462) The District Court's order regarding Plaintiff's ability to seek third party discovery from HII thus necessitated a revised schedule for these motions—one that would allow Plaintiff to obtain any such discovery from HII and factor that discovery into its response to such motions.

3

On February 8, 2017, the Court issued a Report and Recommendation on Crane, Warren and Buffalo's product identification/nexus summary judgment motions. (D.I. 612) It ultimately recommended that Warren's Motion be granted in its entirety (such that Warren should be dismissed as a Defendant in the case), and that Crane's and Buffalo's respective Motions be granted-in-part and denied-in-part. (*Id.* at 30) More specifically, the Court ruled that the three Defendants had demonstrated the absence of a genuine issue of material fact as to the issue of causation—that is, that Plaintiff could not show that there was a nexus between: (1) Mr. MacQueen's prior work on the two United States Navy ships, and (2) any exposure to an asbestos containing product for which the remaining Defendants could be held responsible. (*Id.* at 6, 25) From there, the Court determined that this finding necessitated a grant of summary judgment as to four of the five counts of the then-operative Fourth Amended Complaint. (*Id.* at 26) As to the other count—Count VII's allegation that the remaining Defendants conspired with Metropolitan Life Insurance Company ("Metropolitan") in order to suppress and misrepresent the hazards of exposure to asbestos, (D.I. 380 at ¶¶ 48-56)—Plaintiff did not contest that the count should be dismissed as to Warren, (D.I. 612 at 26). But Plaintiff argued that the Court's recommendation, if adopted, would not eliminate any possibility of liability as to Buffalo and Crane with regard to Count VII. (*Id.* at 27) And the Court ultimately found that it could not recommend dismissal of Count VII as to Buffalo and Crane, largely due to the fact that Buffalo and Crane had not addressed Count VII in their briefing on the product identification/nexus summary judgment motions. (*Id.* at 28-30)

Plaintiff subsequently agreed to the dismissal of Buffalo from the case. (D.I. 619) This left Crane as the only remaining Defendant. After Judge Robinson denied objections to the

Court's Report and Recommendation regarding the product identification/nexus summary judgment motions, (D.I. 620), Plaintiff indicated to the Court that it wished to proceed forward as to its conspiracy claim against Crane, (D.I. 621 at 2).

Therefore, on April 21, 2017, the Court ordered that, pursuant to the terms of the Scheduling Order, expert discovery on Plaintiff's conspiracy claim against Crane would commence. Plaintiff then served expert reports. Crane filed a motion to strike those reports ("motion to strike expert reports"), arguing that they violated Federal Rules of Evidence 402 and 702. (D.I. 624) Briefing was completed on the motion to strike expert reports, and on September 25, 2017, the Court granted Crane's unopposed motion to stay further expert discovery until the Court ruled on the motion to strike expert reports. (D.I. 628; D.I. 629) That motion remains pending.

Next, Crane filed a motion for summary judgment as to the conspiracy claim ("motion for summary judgment") on October 18, 2017. (D.I. 630) This, in turn, led Plaintiff to file the instant Motion on October 27, 2017, in which Plaintiff seeks to strike Crane's motion for summary judgment as untimely. (D.I. 632) The Motion was fully briefed as of November 10, 2017, (D.I. 635).[3] The Court also granted Plaintiff's unopposed motion to stay completion of briefing on Crane's motion for summary judgment, pending the Court's decision on the instant Motion. (D.I. 633; D.I. 634)

## II. STANDARD OF REVIEW

Plaintiff asserts in her Motion that Crane's motion for summary judgment is untimely

---

[3] Crane filed an answering brief regarding the Motion, (D.I. 635), and Plaintiff opted not to file a reply brief.

5

pursuant to the Scheduling Order. (D.I. 632 at 1) Federal Rule of Civil Procedure 16(b) governs whether a court should modify a scheduling order to permit the filing of an otherwise untimely motion. It states that if a party seeks such a modification, then that party must demonstrate "good cause" in support thereof. Fed. R. Civ. P. 16(b)(4); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009). This "good cause" standard requires the movant to demonstrate that the existing schedule cannot reasonably be met, despite the movant's diligence. *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*, Civ. No. 11-84-SLR, 2013 WL 3812074, at *2 (D. Del. July 22, 2013); *Cordance Corp.*, 255 F.R.D. at 371.

## III. DISCUSSION

With its Motion, Plaintiff argues that Crane's currently-pending motion for summary judgment on Count VII should have been filed by the deadline set out in Paragraph 11 of the Scheduling Order.[4] Plaintiff argues that because it was not, and because Crane has not shown good cause to extend that deadline, the Court should strike Crane's motion for summary judgment as untimely. The Court disagrees that Crane's motion was untimely, for the reasons set out below.

The Scheduling Order clearly indicated that the deadline set out in Paragraph 11 related only to the filing of one particular type of summary judgment motion that would be important to this case—summary judgment motions relating to the issue of product identification and nexus. (D.I. 584 at ¶ 11 ("All renewed and supplemented case dispositive motions *on product identification and nexus* . . . shall be . . . filed . . . .") (emphasis added)) Elsewhere, in Paragraph

---

[4] Plaintiff states that this deadline passed on July 1, 2016. (D.I. 632 at 1) July 1, 2016 was the original deadline set out in Paragraph 11 of the Scheduling Order, but as noted above, the Court later extended that deadline to August 5, 2016. (D.I. 596 at 8-9)

6

1(b)(iii) of the Scheduling Order, there was a separate deadline for the filing of "Other Dispositive Motions"; that deadline, pursuant to the Scheduling Order, was "201 days after all summary judgment motions are resolved." (*Id.* at ¶ 1(b)(iii)) In context, it is clear that the term "all summary judgment motions" in Paragraph 1(b)(iii) was meant to refer to all summary judgment motions *that were filed on the issue of product identification and nexus*—since those were the only type of summary judgment motions for which the Scheduling Order had set a different, earlier filing deadline.[5] And this all makes sense. It stands to reason that in a case like this, the parties would wish to first resolve the issue of nexus/causation—a threshold concern that, if addressed early, could narrow the remaining issues in the case—before they proceeded to address any other issues that remained thereafter. And there are plenty of possible summary judgment motions that parties in a case like this might wish to file that do *not* have to do with the issue of nexus/causation—like the motion for summary judgment that Crane has now filed.

Crane's motion for summary judgment otherwise falls within the requirements set out by Paragraph 1(b)(iii). It is an "Other Dispositive Motion[,]" in that, if granted, it would dispose of the remaining claim in this case. And there is no dispute that it was filed within the time parameters set out in Paragraph 1(b)(iii).

---

[5] Even Plaintiff does not argue that this language in Paragraph 1(b)(iii) meant that *any summary judgment motion of any kind* was required to be filed by the deadline set out in Paragraph 11. Instead, it seems to assert that summary judgment motions could be filed pursuant to Paragraph 1(b)(iii) only so long as they were "dispositive motions based on a lack of required expert testimony." (D.I. 632 at 2) In this Memorandum Order, the Court explains why Paragraph 1(b)(iii) cannot be read so narrowly. But even if Plaintiff were correct as to Paragraph 1(b)(iii)'s meaning, as Crane notes, its motion for summary judgment *is* "based on a lack of required expert testimony." (D.I. 635 at 2) In its opening brief regarding that motion, Crane argues, *inter alia*, that Plaintiff's "expert witness materials" demonstrate a "complete lack of evidence supporting Plaintiff's claim." (D.I. 631 at 3)

7

Plaintiff notes that the Court, in its Report and Recommendation on the product identification/nexus issue, noted that Crane had failed to "provide[] some explanation as to why Count VII should be dismissed" and that the Court thus declined to grant summary judgment as to Count VII at that time. (D.I. 632 at 1 (citing D.I. 612 at 29) (emphasis omitted)) But contrary to Plaintiff's suggestion, the Court's statement there was not meant to indicate that Paragraph 11's motion deadline provided the only opportunity for Crane to move for summary judgment on Count VII. Instead, what the Court was saying in that passage was that Crane had not explained why Plaintiff's failure to demonstrate a genuine issue of material fact on the *issue of causation* meant that Crane should necessarily be granted summary judgment on Count VII. Crane still had the opportunity to later argue (if it could) that summary judgment on Count VII should be granted *on some other basis*, pursuant to Paragraph 1(b) of the Scheduling Order. That is what it is now doing with its pending motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion is DENIED. Briefing on Crane's motion for summary judgment should now continue, on the schedule set out in Plaintiff's unopposed motion to stay completion of briefing on Crane's motion for summary judgment. (D.I. 633 at 1 (noting that Plaintiff has until 14 days after the issuance of the instant Memorandum Order to file an answering brief regarding Crane's motion for summary judgment, with a reply brief to be filed thereafter by Crane pursuant to the deadline set by this Court's Local Rules of Civil Practice and Procedure))

Dated: December 15, 2017    _____
                            Christopher J. Burke
                            UNITED STATES MAGISTRATE JUDGE