IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARGUERITE MACQUEEN, )
Individually and as the Surviving Spouse )
of David MacQueen, Deceased, )
)
      Plaintiff, )
)
v. ) Civil Action No. 13-831-LPS-CJB
) Consolidated
UNION CARBIDE CORPORATION, )
et al., )
)
      Defendants. )

**MEMORANDUM ORDER**

Presently pending before the Court in this asbestos-related personal injury action is a motion filed by remaining Defendant Crane Company ("Defendant" or "Crane") seeking to strike Plaintiff Marguerite MacQueen's ("Plaintiff") expert reports, on the ground that the reports are violative of Federal Rules of Evidence 402 and 702 ("Motion"). (D.I. 624) Plaintiff opposes the Motion. For the reasons discussed below, the Motion is DENIED.

**I.    BACKGROUND**

The Court incorporates by reference the factual and procedural background regarding this case set out in its December 15, 2017 Memorandum Order. (D.I. 636 at 1-5) Below it makes reference to only those background facts necessary to give context to the instant Motion.

On March 28, 2013, Plaintiff filed her Complaint in the Superior Court of Delaware, in and for New Castle County. (D.I. 1, ex. 1 ("Complaint")) In the Complaint, Plaintiff asserted state law causes of action based on her husband David MacQueen's ("MacQueen") alleged exposure to asbestos and asbestos-containing products while MacQueen was employed: (1) by the United States Navy aboard the U.S.S. *Randolph* and the U.S.S. *Independence* from 1956 to

1960; and (2) as a salesman by Union Carbide Corporation from approximately 1963 to 1980. (*Id.* at ¶ 11) The matter was later removed to this Court, and proceeded as the instant consolidated action.

Crane is the only remaining Defendant in this case. The only remaining count of the operative Fourth Amended Complaint is Count VII's allegation that Crane and others conspired to suppress and misrepresent the hazards of exposure to asbestos. (D.I. 380 at ¶¶ 48-56; *see also* D.I. 621 at 2) On April 21, 2017, the Court ordered that, pursuant to the terms of the operative Scheduling Order, expert discovery on Plaintiff's conspiracy claim against Crane would commence. Plaintiff then served initial expert reports on the subject from James R. Bruce, M.D. (dated May 26, 2017), Barry I. Castleman, Sc.D. (dated August 18, 2015) and Captain Francis J. Burger (dated November 18, 2014). (D.I. 622; D.I. 624, exs. A-C; D.I. 625 at 5)

Crane filed the instant Motion on June 29, 2017, (D.I. 624), in which it moves to strike these three expert reports. The Motion was fully briefed as of July 20, 2017. (D.I. 626) On September 25, 2017, the Court granted Crane's unopposed motion to stay further expert discovery until the Court ruled on the instant Motion. (D.I. 628; D.I. 629)

## II. STANDARD OF REVIEW

Crane asserts in its Motion that Plaintiff's expert reports should be stricken on the ground that they are "in violation of Federal Rules of Evidence 402 and 702 [because they] fail to set forth any opinions relevant to Plaintiff's sole remaining claim against Crane Co." (D.I. 624 at 1) Thus, Crane's Motion is really a motion based on the Supreme Court of the United States' decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (D.I. 584 at ¶ 1(b)(ii);

D.I. 625 at 5)[1]

Rule 702 governs the admissibility of qualified expert testimony, providing that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702's requirements were examined in detail in *Daubert*, and have been said to embody "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010). This Motion implicates only the "fit" requirement.

With regard to that "fit" requirement, it "goes primarily to relevance"; the testimony at issue must "assist the trier of fact to understand the evidence or to determine a fact in issue" and have "a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (internal quotation marks and citations omitted); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The standard for fit, however, is "not high"; it is met "when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citations omitted).

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen*

---

[1] The instant *Daubert* Motion is procedurally unusual, in that it was filed prior to the close of expert discovery. Typically, such motions are filed after expert discovery is complete, at a time when the scope of an expert's proposed testimony is well defined.

3

*AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)). Nonetheless, the burden is placed on the party offering expert testimony to show that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).

## III. DISCUSSION

With its Motion, Defendant argues that each of Dr. Bruce's, Dr. Castleman's, and Captain Burger's proposed testimony, described in their expert reports, are irrelevant to the remaining claim set out in Count VII. (D.I. 624) The Court's understanding is that with Count VII, Plaintiff is pursuing a claim of civil conspiracy under Delaware law. (D.I. 380 at ¶¶ 48-56; D.I. 625 at 4) The elements of such a claim are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) damages resulting from the action of the parties to the conspiracy. *See AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987); *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, C.A. No. 7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014). As to the "unlawful act" that is said to have been done in furtherance of the conspiracy, Plaintiff is here asserting the tort of intentional misrepresentation. (D.I. 625 at 4 (citing *Nicolet*, 525 A.2d at 150)) The tort of intentional misrepresentation under Delaware law, in turn, has five elements: (1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) the defendant acted with scienter; (3) the defendant had an intent to induce plaintiff's reliance upon the concealment; (4) causation; and (5) damages resulting from the concealment. *Nicolet*, 525 A.2d at 149; *Johnson v. Preferred Prof'l Ins. Co.*, 91 A.3d 994, 1017 (Del. Sup. Ct. 2014).

With the law on civil conspiracy now set out, the Court will briefly address the Motion as

4

it relates to each expert's report.

### A. Dr. Bruce

Crane asserts that Dr. Bruce's two-page expert report, (D.I. 624, ex. A), should be struck because "he does not opine that a conspiracy between Crane . . . [and] any other entity . . . was a cause of" MacQueen's lung cancer[,]" (D.I. 624 at 2). Plaintiff, however, argues that Dr. Bruce's report and opinion is simply offered to show that MacQueen's lung cancer was caused, at least in part, by exposure to asbestos. (D.I. 625 at 6; *see also* D.I. 624, ex. A at 1-2 (concluding the same, in part due to review of a 2012 evaluation of MacQueen by Dr. Steven Dikman, M.D.)) As noted above, with regard to the conspiracy claim, Plaintiff will have to establish damages resulting from the actions of the parties to the conspiracy. It is understandable to the Court that, as one brick in the wall of such a showing, Plaintiff would first attempt to demonstrate that MacQueen's lung cancer was caused by asbestos exposure (even if Plaintiff would *also* need to offer additional evidence to show that Crane was somehow a part of a conspiracy that, in some way, caused such damage to occur). (D.I. 625 at 6-7; *see also* D.I. 380 at ¶ 56) In light of this, Dr. Bruce's testimony appears relevant, and so the Court DENIES the Motion as to Dr. Bruce.

### B. Dr. Castleman

Crane argues that the Court should strike Dr. Castleman's testimony, because in his 16-page affidavit, (D.I. 624, ex. B), Dr. Castleman "sets forth no opinion about Crane Co.'s knowledge, much less about Crane Co.'s alleged involvement in a conspiracy . . . to suppress or misrepresent the hazards of asbestos[,]" (D.I. 624 at 2). Plaintiff responds that Dr. Castleman's intended testimony is relevant because it will go to the issue of "what Crane Co. knew regarding the hazards of asbestos at the relevant time while engaging in a conspiracy." (D.I. 625 at 8) As

5

evidence of that, Plaintiff submits the transcript of testimony that Dr. Castleman gave in another case, wherein he provides information suggesting that Crane knew of the hazards of asbestos as of the early part of the twentieth century. (D.I. 625 at 7-8 (citing *id.*, ex. 2 at 403-12, 415-21, 473-74))[2]

As noted above, Plaintiff is alleging that as part of the conspiracy in question, Crane and/or its co-conspirators engaged in an unlawful act—here, the tort of intentional misrepresentation. To the extent that Crane, in engaging in that tort, is alleged to have acted with scienter to misrepresent facts regarding asbestos (that, in turn, in some way caused harm to MacQueen), then what Crane knew about asbestos and its harms (and when they knew it) seems relevant to Count VII. (D.I. 625 at 7-8) Both sides indicate that Dr. Castleman is expected to provide some expert testimony as to Crane's knowledge in this regard. (D.I. 625 at 8; D.I. 626 at 4) And so the Court concludes that his proffered testimony seems to "fit" with an issue in the case, and will thus DENY the Motion as to Dr. Castleman.[3]

C. **Captain Burger**

Lastly, Crane notes that the Court has previously reviewed Captain Burger's proposed testimony, (D.I. 624, ex. C), in issuing its February 8, 2017 Report and Recommendation ("February 8, 2017 R&R") granting-in-part Crane's motion for summary judgment on product identification and nexus grounds, (D.I. 612). (D.I. 624 at 2) Crane argues that Captain Burger's

---

[2] Plaintiff submitted this testimony to Crane along with Dr. Castleman's affidavit. (D.I. 622)

[3] That Dr. Castleman's testimony will not, in and of itself, "complete the analysis of proof" as to all elements of the conspiracy claim, (D.I. 626 at 4), does not bear on whether it is *relevant* to that claim.

6

testimony should be struck because he "offers no opinions about any alleged conspiracy between Crane Co. [and] any other entities." (*Id.*) Plaintiff responds by noting that "while the Court found that Captain Burger's affidavit was not sufficient to establish genuine issues of material fact[] relative to the issue of [MacQueen's] exposures to asbestos-containing products and equipment of . . . Crane" that does not mean that "Captain Burger's expertise could [not] be *contributory* . . . in establishing general asbestos exposure causation for . . . MacQueen's fatal lung cancer." (D.I. 625 at 8 (emphasis in original))

The Court cannot say, at this stage, that Captain Burger's proposed testimony is absolutely irrelevant to any issues relating to Count VII. As the Court noted in its February 8, 2017 R&R, Captain Burger's testimony may be helpful to Plaintiff (at least as a fact witness) in establishing that there were asbestos-containing products on the two ships on which MacQueen worked. (D.I. 612 at 21) And on the limited record here, it is unclear whether Captain Burger's expert opinion (offered in conjunction with other evidence Plaintiff might present) might have some other relevance to the issue of general causation/damages. And so the Court will DENY Crane's Motion as to Captain Burger, without prejudice to its ability to renew the motion after the close of expert discovery.[4]

## IV. CONCLUSION

In light of the lenient standard for the "fit" requirement, the limited state of the relevant record, and for the reasons set forth above, the Court hereby ORDERS that Defendant's Motion is DENIED.

---

[4] Crane's arguments regarding unfair prejudice or exclusion of certain portions of Captain Burger's testimony pursuant to Federal Rule of Evidence 403, (D.I. 626 at 3), are the kinds of arguments that should be made at the motion *in limine* stage, not here.

Dated: March 14, 2018

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE