# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARGUERITE MACQUEEN,<br>Individually and as the Surviving Spouse<br>of David MacQueen, Deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>UNION CARBIDE CORPORATION,<br>et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 13-831-LPS-CJB<br>Consolidated |

## REPORT AND RECOMMENDATION

Presently before the Court in this asbestos-related personal injury action is Defendant

Crane Co.'s ("Crane") motion for summary judgment, filed pursuant to Federal Rule of Civil

Procedure 56 (the "Motion"). (D.I. 630) For the reasons that follow, the Court recommends that

Crane's Motion be GRANTED.

## I.  BACKGROUND

On March 28, 2013, Plaintiff Marguerite MacQueen filed this lawsuit in the Superior

Court of Delaware, in and for New Castle County. (D.I. 1, ex. 1 ("Complaint")) In the

Complaint, Plaintiff asserted state law causes of action against 54 different Defendants based on

her husband David MacQueen's ("Mr. MacQueen") alleged exposure to asbestos and asbestos-

containing products while Mr. MacQueen was employed: (1) by the United States Navy aboard

the U.S.S. *Randolph* and the U.S.S. *Independence* from 1956 to 1960; and (2) as a salesman by

Union Carbide Corporation from approximately 1963 to 1980. (*Id.* at ¶ 11)

On May 10, 2013, Crane and Defendant Elliott Company filed separate notices of

removal in this Court. (*See, e.g.*, D.I. 1) This consolidated case was later referred to the Court by District Judge Sue L. Robinson, for the Court to "conduct all proceedings . . . [and] hear and determine all motions, through and including the pretrial conference." (D.I. 152) Subsequent to Judge Robinson's later retirement, the case was first re-assigned to visiting District Judge Eduardo C. Robreno, and has since been re-assigned to Chief Judge Leonard P. Stark. The substance of the Court's referral, however, has remained the same through these re-assignments. (*See, e.g.*, D.I. 627)

On February 8, 2017, the Court issued a Report and Recommendation (the "Feb. 8, 2017 R&R") on product identification/nexus summary judgment motions filed by Crane, Defendant Warren Pumps LLC ("Warren") and Defendant Air & Liquid Systems Corporation ("Buffalo").[1] (D.I. 612) The Court ultimately recommended that Warren's motion be granted in its entirety (such that Warren should be dismissed as a Defendant in the case), and that Crane's and Buffalo's respective motions be granted-in-part and denied-in-part. (*Id.* at 30) More specifically, the Court ruled that the three Defendants had demonstrated the absence of a genuine issue of material fact as to the issue of causation—that is, that Plaintiff could not show that there was a nexus between: (1) Mr. MacQueen's prior work on the two United States Navy ships, and (2) any exposure to an asbestos-containing product for which the remaining Defendants could be held responsible. (*Id.* at 6, 25) From there, the Court determined that this finding necessitated a grant of summary judgment as to four of the five currently operative counts of the operative

---

[1]      At that point in the case, Crane, Warren and Buffalo were the only remaining Defendants. The other 51 Defendants had all claims/cross-claims against them dismissed by stipulation or otherwise, prior to the filing of the product identification/nexus summary judgment motions. (*See* D.I. 612 at 2)

Fourth Amended Complaint (the "FAC" or the "Amended Complaint"). (*Id.* at 26) As to the remaining count—Count VII's allegation that Defendants participated in a civil conspiracy in order to suppress and misrepresent the hazards of exposure to asbestos, (D.I. 380 at ¶¶ 48-56)—Plaintiff did not contest that the count should be dismissed as to Warren, (D.I. 612 at 26). But Plaintiff argued that the Court's recommendation, if adopted, would not eliminate any possibility of liability as to Buffalo and Crane regarding Count VII. (*Id.* at 27) The Court ultimately found that it could not recommend dismissal of Count VII as to Buffalo and Crane, largely because Buffalo and Crane had not addressed Count VII in their briefing on the product identification/nexus summary judgment motions. (*Id.* at 28-30)

Plaintiff subsequently agreed to the dismissal of Buffalo from the case. (D.I. 619) This left Crane as the only remaining Defendant. After Judge Robinson affirmed the Feb. 8, 2017 R&R, (D.I. 620), Plaintiff indicated that it wished to proceed as to its conspiracy claim against Crane, (D.I. 621 at 2).

On April 21, 2017, the Court ordered that, pursuant to the terms of the Scheduling Order, expert discovery should commence on Plaintiff's conspiracy claim against Crane. Plaintiff then served expert reports. Crane later filed a motion to strike those reports ("motion to strike expert reports"), arguing that the reports violated Federal Rules of Evidence 402 and 702. (D.I. 624)[2] On March 14, 2018, the Court ultimately issued a Memorandum Order denying Crane's motion to strike expert reports. (D.I. 643)

Crane also filed the instant Motion on October 18, 2017. (D.I. 630) This, in turn, led

---

[2]    On September 25, 2017, the Court granted Crane's unopposed motion to stay further expert discovery until the Court ruled on the motion to strike expert reports. (D.I. 628; D.I. 629)

Plaintiff to file a motion to strike the Motion as untimely ("motion to strike the summary judgment motion") on October 27, 2017. (D.I. 632)[3] On December 15, 2017, the Court issued a Memorandum Order denying Plaintiff's motion to strike the summary judgment motion, finding that the Motion was not untimely under the operative Scheduling Order. (D.I. 636)

Briefing on the Motion completed on February 5, 2018. (D.I. 640) At the parties' request, the Court held oral argument on the Motion on April 11, 2018. (D.I. 645 (hereinafter, "Tr."))

## II.    STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party has sufficiently demonstrated the absence of a genuine dispute of material fact, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks, citation and emphasis omitted).

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

---

[3]    The Court granted Plaintiff's unopposed motion to stay the remaining briefing on the Motion pending the Court's decision on Plaintiff's motion to strike the summary judgment motion. (D.I. 633; D.I. 634)

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter the outcome are "material," and a factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III. DISCUSSION

As noted above, the sole remaining count against Crane is Count VII. With that Count, Plaintiff is pursuing a claim of civil conspiracy under Delaware law. (D.I. 380 at ¶¶ 48-56; D.I. 638 at 1 n.1, 7, 10-11) The elements of such a claim are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) damages resulting from the action of the parties to the conspiracy. *See AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987); *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, C.A. No. 7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014).

Plaintiff is asserting that the "unlawful act" said to have been done in furtherance of the conspiracy is the tort of intentional misrepresentation. (D.I. 638 at 11 (citing *Nicolet, Inc.*, 525 A.2d at 150)) Under Delaware law, intentional misrepresentation (also referred to as "fraudulent concealment") has five elements: (1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) the defendant acted with scienter; (3) the defendant had an intent to induce plaintiff's reliance upon the concealment; (4) causation; and (5) damages resulting from the concealment. *Nicolet Inc.*, 525 A.2d at 149; *Johnson v. Preferred Prof'l Ins. Co.*, 91 A.3d 994, 1017 (Del. Sup. Ct. 2014).

In *Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987), an asbestos litigation matter, the Delaware Supreme Court explained how a defendant might be found liable for participating in a civil conspiracy somewhat similar to the type alleged here. The *Nicolet* Court noted that under Delaware law, a conspirator is jointly and severally liable for the acts of co-conspirators committed in furtherance of the conspiracy. 525 A.2d at 150. It then explained that the

6

defendant there was subject to liability if the plaintiffs could establish that:

> (1) [Defendant] was a member of a conspiracy consisting of asbestos manufacturers; (2) a member of the conspiracy, acting in furtherance of the conspiracy, actively suppressed data on the harmful effects of asbestos with the intent to hide such information from plaintiffs in order to induce them to continue their exposure (i.e., committed the tort of intentional misrepresentation); and, (3) plaintiffs were injured as a result of the unlawful acts of [defendant]'s co-conspirator(s).

*Id.*

With the relevant law now set out, the Court turns to the substance of Crane's Motion. In its accompanying briefing, Crane has advanced many arguments as to why the Court should grant it summary judgment on Plaintiff's civil conspiracy claim. The Court need not address all of those arguments. Instead, below the Court will explain why at least two of Crane's arguments entitle it to the relief it seeks.[4]

### A.    Count VII Does Not Encompass the Conspiracy that Plaintiff is Now Asserting

---

[4] Before doing so, the Court pauses to address Plaintiff's claim that Crane failed to satisfy its initial burden to demonstrate the absence of a genuine issue of material fact. (D.I. 638 at 9-10) With regard to a summary judgment motion, as was previously noted, "the moving party bears the initial burden of showing the absence of a genuine issue of material fact[.]" *Haskins v. Christiana Care Health Servs.*, 701 F. Supp. 2d 623, 627 (D. Del. 2010). A movant may satisfy that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325) (certain quotation marks omitted). Here, Crane, in its opening brief, pointed out an absence of evidence as to each element of Plaintiff's civil conspiracy claim, (D.I. 631 at 2), and then proceeded to cite to the content of Plaintiff's expert witness reports to demonstrate that lack of evidence, (*id.* at 3). This shows that Crane did enough to "inform[] the district court of the basis for its motion" and to "identify[]" the portions of the record that demonstrate the absence of a genuine issue of fact. *Celotex Corp.*, 477 U.S. at 323. The burden thus has shifted to Plaintiff to demonstrate why a genuine issue of material fact exists.

Defendant's first winning argument relates to what Plaintiff did (and did not) plead in Count VII. In the FAC, Count VII is styled as a claim for "Conspiracy Against Metropolitan Life Insurance Company ["Metropolitan"]." (D.I. 380 at 31) The Count also includes the following allegations:

- "Defendant Metropolitan Life Insurance Company agreed and conspired with the Defendants named herein and with other miners, manufacturers, sellers, distributors, and installers of asbestos-containing products to suppress and misrepresent the hazards of exposure to asbestos." (D.I. 380 at ¶ 49)

- "Defendant Metropolitan Life Insurance Company, as well as other members of the asbestos industry, including but not limited to [D]efendants listed herein, engaged in investigations and research as to the hazards of asbestos . . . Furthermore, Metropolitan [] financially aided the asbestos industry in its endeavors to mislead and obfuscate." (*Id.* at ¶ 50)

- "The Defendants knowingly and willfully conspired among themselves to perpetuate the actions and omissions referred to herein as well as aided and abetted their co-[D]efendants and manufacturers of asbestos-containing products in keeping [Mr. MacQueen and others] ignorant of the risks they faced when exposed to asbestos and asbestos containing products . . ." (*Id.* at ¶ 51)

- "The Defendants directly and indirectly materially misrepresented that asbestos was not hazardous and/or could be used safely . . ." (*Id.* at ¶ 52)

- "Defendants had reason to expect that as a result of such representation, [Mr. MacQueen and others] would be exposed to asbestos." (*Id.* at ¶ 53)

- "[D]efendants continued to act wrongfully both individually and together in a conspiracy to mislead and misrepresent the extent of the past wrongful actions and omissions . . ." (*Id.* at ¶ 54)

- "Similarly, Defendants aided and abetted the manufacturers, miners, suppliers, and users of asbestos and asbestos products in keeping these true dangers of asbestos exposure secret and/or misrepresented . . ." (*Id.* at ¶ 55)

- "As a direct and proximate result of the above wrongful conspiracy of the Defendants, [Mr. MacQueen] was exposed to asbestos and . . . developed the asbestos-related disease discussed and sustained the injuries described herein . . ." (*Id.* at ¶ 56)

On its face, then, Count VII addresses an alleged conspiracy between Metropolitan and some or all of the other 53 listed Defendants, as well as, perhaps, "other miners, manufacturers, sellers, distributors, and installers of asbestos-containing products" and/or "other members of the asbestos industry." The purpose of the conspiracy was said to be to suppress and misrepresent the hazards of exposure to asbestos to persons, including people like Mr. MacQueen.[5]

In its answering brief, however, Plaintiff more fully explains the nature of the civil conspiracy that it now seeks to prove at trial. The record, Plaintiff argues, contains evidence that Crane was actually "in affirmative and active agreement with the *United States Navy*[] to decline to warn end users [like Mr. MacQueen] about the hazards of human asbestos exposure[.]" (D.I. 638 at 12 (certain emphasis added, certain emphasis omitted) (citations omitted)) Plaintiff's assertion, then, is that to the extent that "Crane did not include warnings to end-users about the potential hazards of asbestos regarding its products [i.e., valve or pump products] installed on the relevant Navy ships [the U.S.S. *Randolph* and the U.S.S. *Independence*] it has presented

---

[5]     Though the title of the Count suggests that the claim is brought *only* against Metropolitan, in its Feb. 8, 2017 R&R, the Court found that the body of Count VII (with its repeated references to "Defendants") fairly asserts liability not just on the part of Metropolitan, but also at least as to other named Defendants. (D.I. 612 at 29-30)

evidence that . . . could establish that the absence of asbestos-related warnings was accomplished at the Navy's direction." (*Id.* (internal quotation marks and citation omitted))[6] The problem for Plaintiff, as Crane notes, is that such a conspiracy is nowhere alleged in Count VII. (D.I. 640 at 2-3 (Crane referring to this allegation as an "entirely new and extraordinary theory" and an attempt by Plaintiff to "impermissibl[y] amend her operative pleading at the summary judgment phase of litigation"); *id.* at 1 (referring to the claim as "an entirely new claim that Plaintiff did not plead—that Crane Co. conspired with the United States Navy, who is not a party to this action"); *see also* Tr. at 7-8, 58)

"A plaintiff cannot raise a claim for the first time at the summary judgment stage if it was not included in the complaint." *Shahin v. Del. Fed. Credit Union*, CONSOLIDATED Civ. No. 10-475-LPS, 2013 WL 5304104, at *5 (D. Del. Sept. 19, 2013) (citing *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008)); *see also Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987). If a plaintiff does assert such a claim (i.e., one not included in the operative complaint) for the first time in her summary judgment briefing, a district court will not consider it. *See McMahon v. Salmond*, 573 F. App'x 128, 135 (3d Cir. 2014) (affirming a district court's decision not to consider the plaintiff's retaliation claim, in a case where the district court concluded that the plaintiff had not pleaded such a claim in the operative complaint); *Bell*, 275 F. App'x at 160 (finding that where the plaintiff had raised First Amendment speech and association claims in his complaint, but had not included reference therein to a First Amendment

---

[6]    Plaintiff argues that although the United States Navy is statutorily immune from suit in this litigation, a defendant like Crane can be found to have engaged in a conspiracy with such an immune-from-suit party. (D.I. 638 at 4, 16) The Court need not address this issue herein in light of its ultimate decision on the Motion, and so it will assume (without deciding) that Plaintiff is right, solely for purposes of resolving the Motion.

retaliation claim, the plaintiff could not raise the retaliation claim for the first time in his response to the defendant's motion for summary judgment); *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 507 n.2 (D. Del. 2017) (noting that the Court would not consider the plaintiff's assertion that the defendant engaged in religious discrimination, since that claim was raised for the first time in plaintiff's responsive brief to defendant's motion for summary judgment, and because the operative complaint contained only allegations of racial discrimination).[7]

For at least two reasons, the Court concludes that Count VII's allegations do not fairly encompass the conspiracy that Plaintiff now seeks to litigate.

First, any fair reading of Count VII indicates that it was describing a conspiracy that in some way involves Metropolitan. The title of the Count states that the claim therein is "[a]gainst" Metropolitan. (D.I. 380 at 31) And the first two substantive paragraphs of the Count explain that the conspiracy described in the Count involves Metropolitan's efforts to conspire with others (including certain Defendants). (*Id.* at ¶¶ 49-50) Yet now, Plaintiff asserts that the conspiracy at issue does not involve Metropolitan at all, and that Crane is "mistaken[]" to presume otherwise. (D.I. 638 at 9; *see also* D.I. 625 at 1, 4) For the reasons set out above, the Court disagrees.

Second, the United States Navy (hereinafter, "the Navy") is never mentioned by name in any of Count VII's allegations. And the Court cannot see how it is reasonable to infer that a branch of the armed forces like the Navy was one of the "miners, manufacturers, sellers,

---

[7]     *See also Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 813-14 (7th Cir. 2011) (affirming the district court's refusal to consider the plaintiff's participation in an investigation of a co-worker's discrimination complaint as facts that could be used to bolster the plaintiff's retaliation claim, because "the record [was] entirely devoid of any mention of th[at] argument before the summary judgment stage of the proceedings").

distributors, and installers of asbestos-containing products" or "members of the asbestos industry" that were possibly being referred to in that Count.

For these reasons, Plaintiff's assertion that Count VII's conspiracy involved Crane conspiring with the Navy has been improperly raised for the first time at the summary judgment stage.[8] This is a sufficient reason to grant summary judgment in favor of Crane.[9]

---

[8] Indeed, at oral argument, Plaintiff's counsel seemed to acknowledge that the instant-asserted conspiracy was not fairly found within the contours of Count VII. Instead, counsel appeared to assert that Plaintiff should nevertheless be able to press such a claim in light of certain of *Crane's* later acts or admissions. (Tr. at 53-54) If something Crane did or said in discovery plausibly gave rise to a new claim not addressed in the original Complaint, then the appropriate response would have been to seek to amend the complaint to include such a claim.

[9] Some circuits have held that when a plaintiff opposes summary judgment based on issues that are outside the scope of the pleadings, the district court must construe the opposition as a request to amend the operative complaint. *See, e.g., Goulatte v. CitiMortgage, Inc.*, Case No. EDCV 12-391 PSG (SPx), 2014 WL 12561620, at *5 (C.D. Cal. June 5, 2014) (citing *Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994)); *see also Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (indicating that circuit precedent "interpret[s] the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint"). Even were the Court required to construe Plaintiff's answering brief this way (and it does not understand Third Circuit precedent, cited above, to impose such a requirement), the deadline for amendment of pleadings passed many years ago. (*See* D.I. 126 at ¶ 2 (indicating that amended pleadings were due to be filed by November 18, 2013); *see also* D.I. 364 (Plaintiff's unopposed Fourth Motion to Amend/Correct Complaint, which was granted by the Court on September 30, 2014)) Thus, Plaintiff would need to demonstrate that "good cause" exists to amend the Scheduling Order at this stage, in order to allow amendment of the FAC. *See* Fed. R. Civ. P. 16(b)(4). In order to show good cause, in turn, "the party moving to amend a pleading must demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Glaxosmithkline LLC v. Glenmark Pharm. Inc.*, Civil Action No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016) (citations omitted).

Plaintiff could not show good cause here. Plaintiff asserts that certain Crane documents, produced along with Crane's Notice of Removal at the beginning of the case, are what support the asserted conspiracy that Plaintiff now describes in her answering brief. (D.I. 638 at 11-12; *see also id.* at 1; Tr. at 33-35) Since the case was removed to this Court, Plaintiff has had years to raise this type of claim and has not done so. This is despite the fact that Plaintiff has amended her complaint multiple times. Thus, even were the Court required to treat Plaintiff's reference to

**B.** **Plaintiff Has Not Demonstrated the Existence of a Genuine Issue of Material Fact in Support of Her Claim That a Conspiracy Existed**

Crane also argues, *inter alia*, that Plaintiff fails to present any facts supporting the first element of a civil conspiracy claim—that there was a conspiracy or confederation between Crane and the Navy to commit a wrong against Mr. MacQueen. (D.I. 640 at 4-5) The Court agrees.

In Delaware, this first element of a civil conspiracy claim "requires a plaintiff to establish that two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Am. Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*, Civil Action No. 8490-VCG, 2014 WL 354496, at *12 (Del. Ch. Feb. 3, 2014) (citation omitted); *see also Anderson v. Airco, Inc.*, No. Civ.A. 02C-12-091HDR, 2004 WL 2827887, at *4 (Del. Super. Ct. Nov. 30, 2004) (explaining that a civil conspiracy "requires an agreement or understanding to commit a wrong against another . . . [which] necessarily involves some mutual mental action coupled with an intent to commit the act which results in the injury") (internal quotation marks and citations omitted). Plaintiff, as noted above, contends that the Navy and Crane had an "affirmative and active agreement . . . to decline to warn end users about the hazards of human asbestos exposure[.]" (D.I. 638 at 12) But Plaintiff has not identified sufficient record evidence to create a genuine issue of material fact as to whether such a mutual agreement or understanding actually existed.

In her briefing, Plaintiff argued to the contrary, and did so solely by pointing to "the 1,639-pages of documentation associated with [Crane's] Petition for Removal" in this case. (D.I. 638 at 12; *see also id.* at 2) Some background explanation is needed in order to understand the

---

this new conspiracy claim involving the Navy as a request to amend the FAC, the Court would decline such a request.

argument Plaintiff is making.

Plaintiff's citation to the "1,639 pages" of documents is a reference to the various exhibits that Crane attached to its Notice of Removal in this case. Crane used those exhibits to help it establish that there was federal jurisdiction for the matter, pursuant to 28 U.S.C. § 1442(a)(1) ("Section 1442(a)(1)"). Under Section 1442(a)(1), an action may be removed to district court if it is "against or directed to" the "United States or any agency thereof or any officer (or any person *acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act *under color of such office*[.]" 28 U.S.C. § 1442(a)(1) (emphasis added). In order to remove a matter pursuant to Section 1442(a)(1), a defendant such as Crane has to establish that: "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citations omitted).

The "colorable federal defense" that Crane asserted here was the "government contractor defense," which can shield a defendant from liability for failure to warn claims. That defense, as it has been applied in a failure to warn case, requires the defendant to establish that: "(1) the United States exercised its discretion and approved the warnings [on a product], if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (citation omitted); *see also* (D.I. 191 at 6-7).

14

The Court ultimately issued a Report and Recommendation regarding the removal issue, in which the Court denied Plaintiff's motion to remand the case back to state court ("the motion to remand R&R"). (D.I. 191) In doing so, the Court determined that Crane had sufficiently raised a colorable federal defense. (*Id.* at 15, 20)

Plaintiff, in now opposing Crane's Motion here, cites for support to portions of the motion to remand R&R. Specifically, Plaintiff cites to excerpts from the motion to remand R&R where the Court found that there was sufficient evidence to demonstrate that Crane could satisfy one of the elements of the government contractor defense (the element requiring that "the United States exercised its discretion and approved the warnings, if any"). In those portions of the motion to remand R&R, the Court, in turn, was primarily citing to an affidavit that Crane submitted from retired U.S. Navy Rear Admiral David P. Sargent, Jr. (the "Sargent Affidavit"). The Court found that the contents of the Sargent Affidavit, when viewed in the light most favorable to Crane, demonstrated that "the Navy was intimately involved in determining what warnings would be (or would not be) provided as to products located on Navy ships, including asbestos-containing products." (D.I. 191 at 17) The Court also found that the Sargent Affidavit could be used to show that "to the extent . . . that Crane did not include warnings to end-users about the potential hazards of asbestos regarding its products installed on the relevant Navy ships . . . [this was] accomplished at the Navy's discretion." (*Id.* at 17-18) In citing to both of these conclusions in the motion to remand R&R, Plaintiff is now suggesting that the portions of the Sargent Affidavit relied upon by the Court could also sufficiently support her claim that a wrongful conspiracy existed between, *inter alia*, Crane and the Navy. (D.I. 638 at 12; *see also id.* at 2) The Court disagrees.

The Sargent Affidavit primarily focused on the Navy's control over the process of procuring parts, equipment, and systems for the construction of its ships. Specifically, the Sargent Affidavit discussed the Navy's development of specifications that contained "very detailed descriptions of what the government required when procuring the items covered by the [specifications], including requirements such as chemical composition, dimensions, required testing and performance demonstrations, required labeling, packaging and shipping requirements, and similar content." (D.I. 1, ex. 3 (hereinafter, "Sargent Affidavit") at ¶ 26) The purpose of these detailed requirements was "to ensure complete and common understanding between the government and vendors of what it is the government [] requires and is committing to pay for, to ensure commonality across systems with similar components, and ensure that replacement parts, equipment and consumable materials, some provided by different manufacturers, will all perform as desired." (*Id.* at ¶ 30) The technical specifications developed by the Navy also included "precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by [the manufacturers] for ultimate use aboard Navy ships." (*Id.* at ¶ 58) The manufacturers would not be allowed "to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy." (*Id.*; *see also id.* at ¶ 60)

According to information contained in the Sargent Affidavit, any supplier of parts for installation aboard a Navy ship (e.g., a company like Crane), would not have been permitted "to include any type of warning or caution statement in [its] instruction books or technical manuals,

beyond those required and approved by the Navy without prior discussion and approval by the Navy." (*Id.* at ¶ 60) As to what warnings would be allowed, the Sargent Affidavit advised that warnings "concerning immediate hazards unique to the operation and maintenance of specific equipment were included in equipment and system specific technical documents[,] such as equipment technical manuals[,] . . . which were aimed and available to only limited audiences of personnel directly involved in work on the specific systems or equipment covered by the manuals." (*Id.* at ¶ 56) However, the Sargent Affidavit specifically noted that "[w]arnings and cautions concerning Navy-wide/all-hands subjects[,] such as general shipboard safety, safe driving awareness, hearing loss prevention and later *asbestos health warnings*[,] were included in readily available and broadly used training documents, some in technical documentation such as Navy rate training manuals, and some in non-technical documentation such as General Military Training syllabuses." (*Id.* (emphasis added)) Therefore, equipment technical manuals "were not . . . appropriate locations for warnings and cautions relating to general or widespread shipboard health issues." (*Id.*)

What can be gleaned from the Sargent Affidavit is that: (1) the Navy provided detailed specifications to equipment manufacturers and suppliers that included what warnings could and could not be put on their products or in related instruction books and manuals; (2) those manufacturers and suppliers could not deviate from the specifications; and (3) asbestos exposure was considered a shipboard health issue, such that the Navy did not consider warnings concerning asbestos exposure to be appropriate for inclusion in individual equipment technical manuals. But what is not present is any statement that suggests evidence of a conspiracy between Crane and the Navy to suppress information on the hazards of asbestos. For one thing, there is

no evidence in the Sargent Affidavit of bad intent on the Navy's part—i.e., that the Navy actively suppressed data on the harmful effects of asbestos (such as by not including that information on products or in related books/manuals) with the intent to hide such information from crew members like Mr. MacQueen. Rather, according to the Sargent Affidavit, to the extent that the Navy knew of the dangers of asbestos exposure, it sought to warn Navy members about those hazards by including warnings and cautions in particular types of training documents, manuals, and syllabuses. (*Id.* at ¶ 56) And to the extent that such warnings were not included on products or in equipment-specific documents, according to the Sargent Affidavit, that was not the product of the Navy's nefarious intent. Instead, it was a byproduct of the need to have uniform processes in place to allow the timely and successful design and construction of large numbers of ships around the globe. (*Id.* at ¶¶ 30, 44) Lastly, the Sargent Affidavit fails to provide *any* evidence specific to Crane; there is nothing in the affidavit about Crane's particular actions or inactions, or about what Crane did and did not do in mutual agreement or understanding with the Navy.

Just as Plaintiff's reference to these portions of the motion to remand R&R (and, relatedly, to the Sargent Affidavit) cannot suffice to meet her burden here, nor can her vague reference to the "1,639 pages" of exhibits attached to Crane's Notice of Removal. (Tr. at 33-35 (Court asking Plaintiff's counsel what Plaintiff was "pointing to by way of record evidence that demonstrates communications leading to an agreement between Crane and the Navy to suppress information about asbestos[,]" and Plaintiff's counsel responding by referencing the "1,600 pages of evidence that basically discuss and flesh out the contours of the nature of the relationship that Crane purports to have had with the Navy"); *see also* D.I. 638 at 2, 12) Rule 56 requires that if Plaintiff is asserting that a fact "is genuinely disputed[,]" then she must "support the assertion by

. . . citing to *particular parts* of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). If there is some portion of those "1,639 pages" of exhibits that creates a genuine issue of fact here, Plaintiff was required to point that out. She is not permitted simply to refer to all 1,639 pages as a whole and say, in essence, "Somewhere in these documents there is evidence of a conspiracy." *Cf. Garay v. Liriano*, 943 F. Supp. 2d 1, 20 (D.D.C. 2013) (explaining that it is not the "[c]ourt's obligation to dig through hundreds of pages of evidence in search of factual support for [p]laintiffs' assertions, where they fail to direct the [c]ourt to specific facts in the record"); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 408 (D.N.J. 1998) ("It is not the court's responsibility to comb through the thousands of pages of exhibits annexed to the motions at hand in order to find support for a party's arguments. Rather, it is the responsibility of each party to support its own contentions with a proper basis in the record of the case. . . . [by identifying] specific facts showing that there is a genuine issue for trial.").

At oral argument, the Court pressed Plaintiff's counsel as to whether there is any *other* document of record that would support the existence of the claimed conspiracy. (Tr. at 36-37) There, Plaintiff's counsel responded by citing to paragraph 9 of Crane's Notice of Removal ("paragraph 9"). (Tr. at 39-40) But that citation too is not helpful to Plaintiff.

In paragraph 9, Crane was making reference to Section 1442(a)(1)'s requirement that, in order to remove this case to federal court, Crane was required to have been acting under the direction of a federal officer in designing, manufacturing or selling asbestos-containing equipment to the Navy. (D.I. 1 at ¶ 9) In general, paragraph 9 (which cites, *inter alia*, to the Sargent Affidavit) went on to detail the process by which a company like Crane could provide equipment to the Navy. (*Id.*) As did the Sargent Affidavit, paragraph 9 explained that since the

19

1950s, the Navy had issued certain specifications for the equipment it purchased, including that manufactured by Crane. (*Id.*) It explained that the Navy would provide "precise contracts and specifications" that companies like Crane must comply with before the Navy would have that company's equipment installed on a Navy ship. (*Id.*) Paragraph 9 noted that such specifications also required certain "product warning language" for use on products. (*Id.*) And it also emphasized that the Navy retained the authority to "review[] the proposed product literature and labeling that accompanied equipment and, at its discretion, edit[] the wording of instructional material and warning, approv[e] certain warning language[,] and disapprov[e] other language." (*Id.*)

Nothing in paragraph 9 provides evidence of the proffered conspiracy between the Navy and Crane. (Tr. at 12-14) Certainly nothing in that paragraph speaks to any *specific* communications (or other evidence of mutual agreement) between the Navy and Crane—e.g., actual communications between the two parties about whether or not to include any particular warnings about asbestos, or about how to conceal any particular dangers of asbestos—in order to commit a wrong against another. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (explaining that once the burden has shifted from the movant, the nonmovant must "come forward with *specific facts* showing that there is a genuine issue for trial") (internal quotation marks and citation omitted) (certain emphasis added, certain emphasis omitted)). Rather, at most, the paragraph generally shows that: (1) companies like Crane were given a list of specifications from the Navy, and they were required to comply with those specifications if they wanted the Navy to buy their equipment; and (2) the Navy could review, edit, and approve warnings on products it was purchasing from companies like Crane, or decide to exclude warnings from those

20

products entirely. From this evidence, it is not reasonable to infer that Crane agreed with the Navy to intentionally misrepresent the dangers of asbestos or had the intent to do so.

For this reason too, then, summary judgment on the sole remaining claim is appropriate.[10]

## IV. CONCLUSION

For the reasons set out above, the Court recommends that Crane's Motion be GRANTED and that the sole remaining count against Crane be dismissed. As this is the final remaining claim, if the District Court agrees that summary judgment should be entered on behalf of Crane, the Court recommends that this case be closed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

---

[10]   It is also doubtful that Plaintiff could satisfy the third element of a civil conspiracy claim—that the conspiracy caused Plaintiff harm. Here, the alleged goal of the conspiracy was to "suppress and misrepresent the hazards of exposure to asbestos." (D.I. 380 at ¶ 49) Yet as the Court noted in its Feb. 8, 2017 R&R, Plaintiff failed to provide evidence that would allow an inference "that Mr. MacQueen worked on or was exposed to [Crane's] products" on the two Navy ships he served on, nor "that any asbestos-containing products that Mr. MacQueen may have been exposed to were manufactured by [Crane]." (D.I. 612 at 25) At oral argument, the Court asked Plaintiff's counsel how Plaintiff intended to prove damages resulting from the alleged conspiracy (i.e., damages resulting from insufficient or non-existent warnings on, *inter alia*, Crane products), if Plaintiff could not demonstrate that Plaintiff actually worked on or was exposed to Crane products in the first place. (Tr. at 50-51) In response, Plaintiff's counsel stated that because the Navy was the center of the alleged conspiracy involving Crane and other equipment manufacturers, then "all that's required is that there needs to be evidence of [Mr. MacQueen's] exposure in the aggregate." (*Id.* at 51) Even if that statement were true, the problem is that Plaintiff has failed to provide evidence that demonstrates that Mr. MacQueen was *actually* exposed to *any* particular asbestos-containing product on the Navy ships. (*See* D.I. 612 at 20) Plaintiff's expert has only opined that, "based on what Mr. MacQueen's job titles and duties were, he '*would have* worked with and been in close proximity to'" certain pieces of equipment containing asbestos. (*Id.* (emphasis in original) (citing D.I. 624, ex. C at ¶¶ 27, 30 (Report of Francis J. Burger))) In light of that, the Court does not fully understand how Plaintiff would prove damages, even based on an "exposure in the aggregate" theory. (Tr. at 48-51)

Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: June 6, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE